KINDRED HEALTHCARE, INC.; Kindred Nursing Centers Limited Partnership d/b/a Kindred Transitional Care & Rehabilitation—Rosewood f/k/a Rosewood Health Care Center; Kindred Nursing Centers East, LLC; Kindred Hospitals Limited Partnership; Kindred Healthcare Operating, Inc.; and Kindred Rehab Services, Inc., d/b/a Peoplefirst Rehabilitation[1], Appellants

v.

Rick HENSON, as Next–Friend of Mary Ferguson, an Incapacitated Person, Appellee.

No. 2013–CA–000895–MR.

Court of Appeals of Kentucky.

May 16, 2014.

Rehearing Denied June 27, 2014.

Discretionary Review Denied by Supreme Court March 9, 2016.

---

1. The Appellants in this matter all have mutual, if not identical, interests in its outcome. They are jointly represented by the same counsel, and have filed combined briefs. In this Opinion, we shall refer to them in the aggregate as "Kindred" unless the context requires otherwise or specificity of a single party is necessary.

Donald L. Miller, II, Jan G. Ahrens, Kristin M. Lomond, Louisville, KY, for Appellants.

2. Rick did not indicate he was signing pursuant to a power of attorney (POA), or as his

Brian M. Jasper, Robert E. Salyer, Lexington, KY, for Appellee.

Before DIXON, NICKELL and TAYLOR, Judges.

*OPINION*

NICKELL, Judge:

The Warren Circuit Court denied Kindred's motion to compel arbitration in compliance with an alternative dispute resolution ("ADR") agreement Kindred maintains it had entered into with Mary Ferguson. The denial was based on the trial court's interpretation and application of the holding in *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky.2012). Kindred timely appealed from the adverse ruling. Following a careful review of the record, briefs, oral arguments of counsel and applicable law, we affirm.

The relevant facts are generally undisputed. Ferguson was admitted to Kindred Transitional Care and Rehabilitation—Rosewood ("Rosewood"), a nursing home facility located in Bowling Green, Kentucky, on January 13, 2011. Ferguson was accompanied to Rosewood by her son, Rick Henson, and his wife, Joyce Henson. At the time of her admission, Ferguson was asked by Cyndi Jones, a Rosewood employee, to sign admission papers. She responded, "I'm too nervous and shaky. Rick, take care of it for me." Based on his mother's verbal request, Rick proceeded to execute admission documents as well as the optional ADR agreement, which he signed in his name.[2] Ferguson was present throughout the admissions process, asked no questions, and voiced no concerns or reservations about any of the documents being executed.

mother's guardian or legal representative.

Jones stated during her deposition that although she had no independent recollection of Ferguson's admission, her routine was to explain each and every document to the resident or his/her agent; permit time to read the documents, and offer copies of those documents if the resident desired. When asked whether she had ever directed a resident to sign the admissions paperwork without reading it, Jones stated "No, I would never advise someone not to read a document and just sign it. That's not only rude, but bad business." In contrast, Rick stated at his deposition that Jones had rushed them through the admissions process, urged them not to read any of the documents, did not explain the paperwork to them, and merely placed the documents in front of him for signature.

Ferguson remained a resident at Rosewood until August 8, 2012, when she was discharged home. On October 12, 2012, Rick, as Ferguson's next friend, brought the instant suit against the owners and operators of Rosewood alleging negligence in the care and treatment of his mother. In reliance on the ADR agreement executed at the time of Ferguson's admission to Rosewood, Kindred moved to compel arbitration and dismiss or stay the pending lawsuit.

The trial court denied the motion, stating that although the admission documents and ADR agreement were executed by Rick at Ferguson's verbal request and Ferguson remained silent when the document was discussed, Rick did not have sufficient explicit authority to settle claims and disputes as required by the holding in *Ping*. While noting *Ping* involved the scope of authority granted by a POA rather than a verbal directive, the trial court nevertheless concluded *Ping* was controlling and provided a framework by which it was to determine whether Ferguson's di-

rective to Rick to "take care of it for me," included authority to execute the optional arbitration agreement. The trial court found there was no evidence Ferguson had contemplated the issue of claim resolution prior to authorizing Rick to sign the documents related to her admission to Rosewood. Thus, in the trial court's view and based on its reading of *Ping*, Rick was acting only as Ferguson's health-care agent and was therefore unable to effectively bind Ferguson to the "wholly optional, binding arbitration agreement," thereby waiving her right to judicial resolution of claims arising from her stay at Rosewood. The trial court went on to find that "[i]f all the statements of Mary Ferguson had been reduced to writing and signed by her, the document clearly would not satisfy the *Ping* test. Surely, its verbal form does not imbue her statements with the authority they otherwise lack."

Kindred now appeals from the order denying its motion to compel arbitration. Generally, orders such as this are interlocutory and not immediately appealable. However, pursuant to KRS[3] 417.220(1)(a), an order denying a motion to compel arbitration is immediately appealable. *See also Conseco Finance Servicing Corp. v. Wilder,* 47 S.W.3d 335, 340 (Ky. App.2001). The enforcement and effect of an arbitration agreement is governed by the Kentucky Uniform Arbitration Act (KUAA), KRS 417.045 *et seq.,* and the Federal Arbitration Act, (FAA) 9 U.S.C. §§ 1 *et seq.* "Both Acts evince a legislative policy favoring arbitration agreements, or at least shielding them from disfavor." *Ping,* 376 S.W.3d at 588.

Nevertheless, under both Acts, a party seeking to compel arbitration bears the initial burden of establishing the exis-

---

**3.** Kentucky Revised Statutes.

tence of a valid agreement to arbitrate, *id.* at 590, a question controlled by state law rules of contract formation. *Id.* The FAA does not preempt state law contract principles, including matters concerning the authority of an agent to enter into a contract and which parties may be bound by that contract. *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 630–31, 129 S.Ct. 1896, 1902, 173 L.Ed.2d 832 (2009). Because this matter is entirely an issue of law, our standard of review is *de novo.* *Conseco,* 47 S.W.3d at 340.

▆ The central question presented revolves around the application of *Ping* to the facts of this case. As an intermediate appellate court, this Court is bound by published decisions of the Kentucky Supreme Court. SCR[4] 1.030(8)(a). The Court of Appeals cannot overrule the established precedent set by the Supreme Court or its predecessor Court. *Smith v. Vilvarajah,* 57 S.W.3d 839, 841 (Ky.App. 2000). We are not bound, however, by precedents which are factually or legally distinguishable from those in the current case.

In urging reversal, Kindred argues Ferguson should be bound to the ADR agreement signed by her son under principles of actual authority, apparent authority, and adoption. Next, Kindred contends *Ping* is plainly distinguishable and applying the principles it set forth as the trial court did clearly exhibits hostility toward arbitration, an action violative of the FAA and preempted under federal law supremacy principles. Finally, asserting the right to contract for arbitration is a right protected by the Kentucky Constitution, Kindred alleges courts should enforce private agreements to arbitrate and any ambiguities should be construed in favor of arbitration.

In reply, Rick argues the trial court correctly determined *Ping* was controlling and he had no authority to bind Ferguson to the ADR agreement. Further, Rick alleges the FAA was not offended and therefore, federal preemption principles were not invoked. Finally, Rick contends Kindred's appeal is so lacking in merit as to be frivolous.

We agree with the trial court—*Ping* is not directly on point as its holding relates to authority delegated under a POA rather than a verbal direction as in this case. However, *Ping* is persuasive and militates against finding Rick was authorized to bind Ferguson to the ADR agreement. The Supreme Court set forth the expansive language used in the POA at issue in *Ping* before concluding it was insufficient to confer authority to enter into an optional arbitration agreement because such agreement was "not within the purview of a health-care agency, since in that circumstance agreeing to arbitrate is not a 'health care' decision." *Ping,* 376 S.W.3d at 593. The Supreme Court further held, "[a]bsent authorization in the power of attorney to settle claims and disputes or some such express authorization addressing dispute resolution, authority to make such a waiver is not to be inferred lightly." *Id.* We believe this strong language applies with equal force to the type of verbal authorization at issue in the present appeal.

▆ It is undisputed that the entire purpose of the interaction on January 13, 2011, was to address Ferguson's medical needs and her admission to Rosewood. At the outset of the discussion regarding execution of the admission documents, Ferguson said "Rick, take care of it for me." The only reasonable assumption to be made from this statement is Ferguson wanted Rick to handle her admission to the facility for medical purposes and did

4. Rules of the Supreme Court of Kentucky.

not contemplate the sacrifice of judicial dispute resolution. Such a general grant of authority to Rick to handle her admission is closely akin to the *Ping* consideration of a general POA with no specific authority granted to settle or resolve disputes or claims, nor to elect a method of resolution—judicial or otherwise. As the trial court noted, had all of the statements made by Ferguson in regard to executing the admission documents been reduced to writing, they clearly would not equate to Rick having the type of authority urged by Kindred.

Kindred argues Rick had actual, apparent and implied authority to execute the arbitration agreement, just as he had such authority to execute the remaining admission documents. We disagree.

[7–9] Actual authority arises from a direct, intentional granting of specific authority from a principal to an agent. Implied authority is "actual authority circumstantially proven which the principal actually intended the agent to possess and includes such powers as are practically necessary to carry out the duties actually delegated." *Mill Street Church of Christ v. Hogan*, 785 S.W.2d 263, 267 (Ky.App. 1990). Whereas actual and implied authority are actually granted to the agent from the principal, apparent authority is created when the principal holds out to others that the agent possesses certain authority that may or may not have been actually granted to the agent. *See id.*, at 267 ("It is a matter of appearances on which third parties come to rely.").

Here, the trial court found Ferguson verbally directed Rick to sign the admission papers because she was shaky and nervous. Rick testified he was directed to sign numerous documents without explanation of their contents, including the ADR agreement at issue. Kindred contends such direction by Ferguson was sufficient to grant Rick both actual and implied authority to sign the arbitration agreement on Ferguson's behalf. However, Ferguson's directive for her son to "take care of it for me" was clearly related to the signing of the admission documents because nothing further had been mentioned at that time.

Unlike the medical forms Rick signed, the ADR agreement was not specifically related to or necessary for Ferguson's admission into Rosewood. This fact is more persuasively demonstrated by the title of the agreement which states, "Alternative Dispute Resolution Agreement Between Resident and Facility (Optional)." The mere fact that this document was placed in the same packet of documents and is designed by Kindred to be executed by the resident or her legal representative at the same time as the admission documents does not change the nature of the arbitration agreement. Thus, we are not persuaded Ferguson's verbal directive was sufficient to confer actual or implied authority upon Rick to bind her to the ADR agreement.

Equally unpersuasive is Kindred's contention that Ferguson's act and subsequent silence were sufficient to cause a belief that Rick was authorized to act on Ferguson's behalf in signing the ADR agreement. Kindred does not challenge the trial court's finding that Ferguson's only statement during the admission process was for her son to handle the matter for her. As we previously noted, since the arbitration agreements were unrelated and unnecessary in both form and function to Ferguson's admission to the nursing facility, Kindred's argument that her verbal direction related to the signing of admission documents was sufficient to create an apparent agency as to the arbitration agreements is without merit.

Kindred next contends Rick acted only as Ferguson's scrivener, making his signature on the ADR agreement Ferguson's under the principle of adoption. We agree with Kindred that it has long been held "where a person's name is signed for him, at his direction, and in his presence, by another, the signature becomes his own, and is sufficient to give the same validity to an instrument as though written by the person himself." *Pardue v. Webb,* 253 Ky. 838, 70 S.W.2d 665, 666 (1934). At first blush, Kindred's scrivener argument is appealing. However, under the reasoning of *Ping,* it must be rejected. The same reasoning that would preclude a legal representative from exercising authority to bind the principal to arbitration under a durable general POA for lack of a specific grant of such authority, would likewise preclude a scrivener acting under general authority to admit one to a facility for medical purposes from exceeding that authority and binding the principal to arbitration. Nonetheless, we perceive Kindred's argument to have a more fundamental flaw; it was never presented to the trial court for consideration. It is axiomatic that a theory of error cannot be raised for the first time on appeal, *Fischer v. Fischer,* 348 S.W.3d 582, 588 (Ky.2011), and an appellant "will not be permitted to feed one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth,* 544 S.W.2d 219, 222 (Ky.1976). Because the issue was not raised below, it is not preserved for our review.

We have considered Kindred's argument regarding federal preemption in light of its perception that the principle underlying the FAA was offended and are unconvinced the trial court's action evinced a "hostility" toward arbitration. Likewise, we have reviewed the myriad of cases cited in support of Kindred's position on this issue and find them inapposite. The trial court was not tasked with determining the validity of any other document Rick executed on Ferguson's behalf—the sole issue at bar was validity of the ADR agreement. No other question of Rick's authority was raised or put to the court for review. We are convinced that under the facts as presented, the trial court would have been in error to adjudicate the efficacy of Rick's signature on other documents at this early stage of the proceedings. As the trial court addressed only those matters before it, we discern no error.

We generally agree with Kindred that the right to contract for arbitration has long been favored under our jurisprudence and constitutional provisions. However, we fail to discern how this preference is applicable to the matter at bar. The issue presented and decided involves only the authority of an ostensible agent to enter an arbitration agreement on behalf of the supposed principal. The right to contract for arbitration has not in any way been infringed by the trial court's decision, nor ours.

Because Rick was never actually, impliedly or apparently authorized to sign the ADR agreement, no contract was ever created. *See Bottoms v. Bottom,* 880 S.W.2d 559, 561 (Ky.App.1994) ("It is a well-known principle of the law of agency that for the principal to be bound by the act of the agent, the latter must have acted with either the express or implied authority of his principal...."). Under the unique facts of this case, the trial court correctly found Rick lacked authority to execute an ADR agreement on his mother's behalf, and did not err in denying Kindred's motion to compel arbitration in conformity with the infirm agreement.

Finally, we consider Rick's suggestion that we deem this appeal frivolous.

Based on the unique facts before us and the evolving body of legal precedent concerning this area of the law, we are not persuaded Kindred's appeal, though unsuccessful, is so lacking in merit as to be considered frivolous. Thus, we must decline Rick's invitation to assess costs or expenses against Kindred.

Therefore, for the foregoing reasons, the judgment of the Warren Circuit Court is affirmed.

ALL CONCUR.