RENDERED:  MAY 27, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0926-MR

DANIEL MEKURIA                                                    APPELLANT

|         | APPEAL FROM JEFFERSON CIRCUIT COURT |
|---------|-------------------------------------|
| v.      | HONORABLE SUSAN SCHULTZ GIBSON, JUDGE |
|         | ACTION NO. 16-CI-001134             |

JAMES MARTIN; THE LOUISVILLE
METROPOLITAN POLICE DEPARTMENT;
(FORMER) CHIEF STEVE CONRAD; THE
LOUISVILLE METROPOLITAN DEPARTMENT
OF CORRECTIONS; DIRECTOR MARK
BOLTON; AND MAYOR GREG
FISCHER                                                           APPELLEES

## OPINION
## AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE:  The Jefferson Circuit Court dismissed various

claims Daniel Mekuria asserted against the above-captioned appellees stemming

from what he deemed was his wrongful arrest and prosecution for drug-related offenses. Upon review, we affirm.

SHOW CAUSE ORDER

Before proceeding to the merits of this appeal, it is necessary to address our jurisdiction: on August 28, 2020, a three-judge motion panel of this Court ordered Mekuria to show cause as to why his appeal should not be dismissed as untimely, and for failing to join an indispensable party. As discussed below, this merits panel has reviewed Mekuria's response to the order and finds he has adequately shown cause.

Regarding the timeliness issue, Mekuria pursued this appeal from a final order of the Jefferson Circuit Court entered June 9, 2020. Appellate review is procedurally initiated by compliance with Kentucky Rules of Civil Procedure (CR) 73.02(1)(a). Mekuria was required by that rule to file a notice of appeal with the circuit clerk, accompanied by the proper filing fee, no later than July 9, 2020. Mekuria, utilizing the Jefferson Circuit Court's electronic filing system, tendered his notice of appeal on July 7, 2020, but failed to pay the requisite filing fee until July 30, 2020. And, according to CR 73.02(1)(b), a notice of appeal "shall not be docketed or noted as filed until such payment is made."

In his response to our show cause order, Mekuria points to an affidavit from his attorney's paralegal. In substance, the paralegal assigns blame to what

she deems a "glitch" in the electronic filing system. She avers that when she electronically filed Mekuria's notice of appeal on July 7, 2020, she inadvertently filed it into the system under the category of a "notice other"-type document, rather than under the category of a "notice of appeal." Afterward, the system did not generate a "pay now" screen for the filing fee – which the paralegal assumed at the time simply meant that the requisite filing fee had been automatically debited from her law firm's account. Later, however, the paralegal realized that the system had charged no filing fee and had generated no "pay now" screen after she had filed the document because she had miscategorized it during the filing process.

As an aside, we remind Mekuria and all other litigants wishing to utilize electronic filing that they do so at their own risk. The electronic filing system exists under the authority of the Kentucky Supreme Court's Administrative Order 2018-11, and Section 18(1) of that order provides in relevant part: "A technical failure, including a failure of the eFiling system, will not excuse a failure to comply with a jurisdictional deadline. The eFiler must ensure that a document is timely filed to comply with jurisdictional deadlines[.]" Illustrative of this point is *Bruner v. Sullivan University System, Inc.*, 544 S.W.3d 669 (Ky. App. 2018). There, Bruner sought to appeal an April 29, 2016, judgment. He electronically tendered his notice of appeal on May 31, 2016, within the requisite filing period. But, claiming that the electronic filing system did not prompt him to pay a filing

fee when he electronically tendered the notice of appeal, he did not pay the requisite filing fee until June 8, 2016. *Id*. at 670.

Because CR 73.02(1)(b) mandates that a notice of appeal "shall not be docketed or noted as filed until such payment is made[,]" the Jefferson Circuit Clerk did not docket Bruner's notice of appeal or note it as filed until June 8, 2016 – a date well outside the period in which Bruner could have invoked our jurisdiction. Consequently, while Bruner assigned fault to the electronic filing system for his belated payment of the filing fee, Bruner's appeal was nevertheless dismissed.

Thus, *if* the Jefferson Circuit Clerk had refused to file Mekuria's notice of appeal until Mekuria paid the filing fee on July 30, 2020, then Mekuria's appeal would have been untimely regardless of any error with or difficulty in navigating the electronic filing system. But, from all appearances, that is *not* what happened in this matter. When the motion panel of this Court issued its show cause order, it only had access to its unofficial online docketing system which indicated Mekuria's notice of appeal had not been filed until July 30, 2020. That was what prompted the order.

We have now reviewed the paper file. As noted in Section 14(1) of the Kentucky Supreme Court's Administrative Order 2018-11, "The clerk will print documents *which have been electronically filed* and maintain a paper file in

each case. The paper file will constitute the *official* court record." (Emphasis added.) Moreover, CR 5.05(3) provides: "The clerk shall endorse upon every pleading and other papers filed with him in an action *the date of its filing*. Such endorsement shall constitute the filing of the pleading or other paper and no order of court shall be required." (Emphasis added.) Here, despite Mekuria's failure to pay the filing fee for his notice of appeal in a timely manner, and his mistaken categorization of that document as "notice other," the clerk nevertheless printed it and added it to the official paper file. The top and bottom of each page of the document also bear the following printed electronic endorsements: "*Filed* 16-CI-001134 07/07/2020 David L. Nicholson, Jefferson Circuit Clerk."[1] (Emphasis added.) Accordingly, this case is distinguishable from *Bruner*, where the certified record only indicated the clerk decided to file the appellant's notice of appeal upon receipt of the filing fee and thus outside of the appellate deadline. *Bruner*, 544 S.W.3d at 672. Here, the certified record indicates Mekuria's notice of appeal was *filed* on "07/07/2020," within the appellate deadline, despite nonpayment of the fee.

---

[1] To be sure, the certified record contains *two* notices of appeal from Mekuria. The latter notice of appeal also includes two additional file stamps – one indicating it was filed in hard copy form and by hand on July 30, 2020, and the other stamp indicating the applicable fee was received by the clerk on that date. With that said, we cannot reasonably infer from the clerk's decision to file this latter notice of appeal that the clerk intended to rescind his earlier endorsement or otherwise alter the filing date of "07/07/2020" – *both* notices still bear the same printed electronic indorsement of "Filed 16-CI-001134 07/07/2020 David L. Nicholson, Jefferson Circuit Clerk."

If a notice of appeal is tendered to a clerk within the time permitted by the Civil Rules, but is unaccompanied by the requisite filing fee, there could be two very different results: (1) the clerk might violate his or her oath of office by filing the notice of appeal anyway, in which case the ensuing appeal will not be subject to automatic dismissal as untimely; or (2) the clerk might refuse to file the notice of appeal until the filing fee is received, in which case – assuming the filing fee is paid on a date outside the appellate window – the ensuing appeal will be subject to automatic dismissal as untimely. *See Bruner*, 544 S.W.3d at 672. In this case, we are presented with an instance of the former situation, rather than the latter. As such, Mekuria's appeal cannot be deemed untimely.

Regarding whether Mekuria failed to join an indispensable party (*i.e.*, the second jurisdictional issue that prompted our order), some background is necessary. On or about March 10, 2016, Mekuria filed his complaint in this action, asserting the following claims against the Louisville/Jefferson County Metropolitan Government (Metro), as well as all the above-captioned appellees: malicious prosecution; abuse of process; negligence; gross negligence; negligent infliction of emotional distress; negligent hiring, retention, and supervision; and *respondeat superior*. Metro and the appellees filed a joint motion to dismiss shortly thereafter, asserting among other things: (1) appellees Louisville Metro Police Department (LMPD) and Louisville Metro Department of Corrections

(LMDC) were not entities capable of being sued, as they are agencies of and have no authority independent from Metro; and (2) Metro and its agencies – as well as any other parties sued in their official capacities as its agent – were entitled to sovereign immunity. Ultimately, the circuit court dismissed Mekuria's claims against those parties based upon sovereign immunity.

Mekuria appealed, but his notice of appeal omitted Metro. That, in turn, prompted the second basis of our motion panel's show cause order. In general, the law regarding indispensable parties is as follows:

> Unlike proceedings in the trial courts, where failure to name an indispensable party may be remedied by a timely amendment to the complaint, under the appellate civil rules, failure to name an indispensable party in the notice of appeal is a jurisdictional defect that cannot be remedied after the thirty-day period for filing a notice of appeal as provided by CR 73.02[.]

*Browning v. Preece*, 392 S.W.3d 388, 391 (Ky. 2013) (internal quotation marks and citations omitted).

As an aside, Mekuria has abandoned the claims he directly asserted against Metro, LMPD, LMDC, and the individuals he named as defendants in their official capacities – a point discussed in more depth below in our analysis. Consequently, we cannot deem Metro an indispensable party to this appeal. *See id.* (explaining the test for determining whether a party is indispensable is whether that

party would "have an interest that would be *affected* by the decision of the Court of Appeals, regardless of whether that interest is affected adversely or favorably.").

Even if it were otherwise, however, whether Metro should or should not be considered an "indispensable party" for purposes of this appeal is effectively a non-issue. True, Metro was not named in Mekuria's notice of appeal. But, Greg Fischer *was* named; he was *only* named in this matter as a party in his official capacity as the Mayor of the Louisville Metro Government, and thus as an agent of Metro; and, as explained in *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985), official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (Internal quotation marks and citations omitted.)

We are unaware of any specific statutory, regulatory, or judicial rule preventing the application of that principle in this instance. Furthermore, between naming Fischer in his notice of appeal, as well as two of Metro's agencies – LMPD and LMDC – we have no difficulty holding that Mekuria provided Metro adequate notice and an opportunity to respond in this matter. Thus, it is likewise

unnecessary to dismiss all or part of Mekuria's appeal based on the second ground of our show cause order.

Because our jurisdiction has been properly invoked in this matter, we now proceed to the merits of this appeal.

BACKGROUND

According to the allegations of his complaint, on May 26, 2014, Mekuria was arrested by LMPD Officer James Martin for traffic-related offenses. Officer Martin subsequently transported him to LMDC for booking and processing. Upon arriving at the jail, Mekuria was asked by LMDC corrections officers whether he possessed any drugs. He answered that he did not, but a search by the corrections officers revealed a small, clear plastic bag in his wallet, containing a substance. The corrections officers notified Officer Martin about their find; and Officer Martin, upon inspection, concluded that the substance in the bag appeared to be heroin. When questioned about it, Mekuria stated the substance was sand that he had collected from an Ethiopian temple during his travels abroad. Officer Martin refused to believe Mekuria and charged him with possession of a controlled substance in the first degree (first offense heroin), tampering with physical evidence, and promotion of contraband.

On or about May 27, 2014, Mekuria was arraigned on the felony charges and was ordered to pay a $200 cash bond for his release. That same day,

the "sand" was sent to the Kentucky State Police laboratory to be tested.  On or about August 29, 2014, the laboratory examination was completed.  The report concluded that no controlled substances were present in the plastic bag and that the substance was, in fact, sand.

On or about September 24, 2014, Mekuria appeared in Jefferson District Court for a preliminary hearing, where his defense attorney was informed that the results of the laboratory examination had not been returned.

Mekuria's defense counsel received the results on or about March 9, 2015.  That same day, the charges against Mekuria were dismissed following a hearing during which only his counsel was present.  The district court's order of dismissal also included the notation, "DM/SPC" – the shorthand employed in Jefferson District Court to indicate "dismissed/stipulation of probable cause."  *See Commonwealth v. Stephenson*, 82 S.W.3d 876, 887 (Ky. 2002) (discussing this notation).  There is no dispute among the parties about the meaning of that notation; nor is there any dispute that it was included on the judgment of dismissal with the apparent acquiescence of Mekuria's defense counsel.

As indicated, on March 10, 2016, Mekuria filed suit in Jefferson Circuit Court against Officer Martin; LMPD Chief Steve Conrad; the LMPD; "unknown officers" of LMDC; LMDC Director Mark Bolton; the LMDC; Metro; and "Hon. Greg Fischer (in his official capacity as Mayor)."  To varying extents,

-10-

his complaint asserted the following claims against each of these parties: malicious prosecution; abuse of process; negligence; gross negligence; negligent infliction of emotional distress; negligent hiring, retention, and supervision; and *respondeat superior*.

In response, the defendants filed a joint motion to dismiss pursuant to CR 12.02, which the circuit court partially granted on September 20, 2016. Specifically, Metro, Metro's agencies (*i.e.*, LMPD and LMDC), and the individuals who were joined as defendants in their official capacities as Metro's agents (such as Fischer) sought and were properly granted dismissal based upon sovereign immunity.[2] Additionally, all the defendants moved to dismiss Mekuria's claims of abuse of process; negligence; gross negligence; negligent infliction of emotional distress; negligent hiring, retention, and supervision; and related *respondeat superior* liability based upon the statute of limitations set forth in Kentucky Revised Statute (KRS) 413.140(1)(a), because each of those claims had accrued on May 26, 2014, the date of Mekuria's allegedly wrongful arrest, which was over a year before Mekuria filed his complaint. The circuit court granted this

---

[2] Mekuria does not address this aspect of the circuit court's judgment in his appellate brief and has therefore "waived or abandoned" review in this respect. *See Hugenberg v. West American Ins. Company/Ohio Cas. Group*, 249 S.W.3d 174, 187-88 (Ky. App. 2006). Apart from that, it is well settled in Kentucky that "[a] county government is cloaked with sovereign immunity. Nor can a county, absent a legislative waiver of immunity, be held vicariously liable in a judicial court for the ministerial acts of its agents, servants, and employees." *Schwindel v Meade County*, 113 S.W.3d 159, 163 (Ky. 2003) (citations omitted).

-11-

aspect of the defendants' joint motion as well, and its decision in that respect is not at issue in this appeal.[3]

The circuit court also dismissed most of Mekuria's claims of malicious prosecution. To be precise, Mekuria had asserted *vicarious* malicious prosecution claims against Conrad and Bolton,[4] and the circuit court dismissed those claims on qualified immunity grounds – a point of contention in this appeal. However, the circuit court refused to dismiss the sole *direct* malicious prosecution claim in this matter, which Mekuria had asserted against Officer Martin. Regarding why, the circuit court took note that Mekuria had argued, in response to the motion to dismiss, that it was merely his *defense counsel* who had stipulated to

---

[3] Mekuria devotes much of his appellate brief to a discussion of qualified immunity, a defense that "applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, . . . ; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (citations omitted). That said, it is unclear whether any of his discussion takes issue with the circuit court's dismissal of his claims of abuse of process; negligence; gross negligence; negligent infliction of emotional distress; negligent hiring, retention, and supervision; and related *respondeat superior* liability – indeed, the only claims he specifically addresses in his brief are his malicious prosecution claims. If that *is* the direction of his discussion, however, it cannot supply a basis for reversal because Mekuria fails to address the circuit court's dismissal of those same claims due to the statute of limitations set forth in KRS 413.140(1)(a). Where, as here, "a judgment is based upon alternative grounds, the judgment must be affirmed on appeal unless both grounds are erroneous." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979). Moreover, "[a]ny part of a judgment appealed from that is not briefed is affirmed as being confessed." *Osborne v. Payne*, 31 S.W.3d 911, 916 (Ky. 2000).

[4] In Count IV of his complaint, Mekuria also sought to hold LMPD, LMDC, Metro, and Greg Fischer (in his official capacity as mayor) vicariously liable for malicious prosecution. As discussed, sovereign immunity precluded any such claims.

probable cause; and that his defense counsel had not consulted with him or secured his consent before doing so.

Officer Martin filed his answer shortly thereafter denying liability. The record indicates the parties then proceeded with discovery. And, on August 16, 2019, Officer Martin moved for summary judgment. In his motion, as before, he argued the stipulation of probable cause set forth in the district court's March 9, 2015, order was dispositive of Mekuria's malicious prosecution claim against him. Officer Martin also argued no evidence supported the existence of at least three essential elements of Mekuria's malicious prosecution claim; *i.e.*, lack of probable cause for initiating the proceedings, termination of the underlying proceedings in Mekuria's favor, or malice.

In response, Mekuria reasserted his prior argument that his defense counsel in the criminal proceedings had stipulated probable cause without his consent. Further, he asserted that no evidence indicated why Officer Martin had concluded the substance was heroin, rather than sand; and no evidence explained the delay in time between when the laboratory examination was completed and when the report was presented to his defense counsel. He also noted the March 9, 2015, judgment of dismissal had been expunged; and that the circuit court had denied Officer Martin's prior motion to dismiss his malicious prosecution claim.

On June 9, 2020, the circuit court summarily dismissed Mekuria's malicious prosecution claim against Officer Martin, and thus resolved what remained of his action. In sum, it explained that its prior decision to deny Officer Martin's CR 12.02 motion to dismiss this claim was interlocutory and thus subject to revision. It explained that an expungement, which does not reflect upon the validity of any underlying proceedings, does not demonstrate whether proceedings were terminated favorably. It explained Mekuria produced no evidence indicating, for purposes of the essential elements of his malicious prosecution claim, that Officer Martin either lacked probable cause or acted maliciously. Moreover, the circuit court found Mekuria's stipulation of probable cause dispositive of his malicious prosecution claim, explaining in relevant part:

> Plaintiff, through his defense counsel, entered into an agreement of compromise wherein he secured a dismissal which stipulated probable cause. Plaintiff challenges the validity of the agreement of compromise by arguing that his defense counsel stipulated to probable cause without the consent or consultation of his client; that Plaintiff's counsel did not discuss stipulating to probable cause with Plaintiff and did not consult with Plaintiff prior to stipulating to probable cause on his behalf.
>
> The Court does note that the case is now more than four years old, and Plaintiff has performed very little if any discovery. Plaintiff is estopped from arguing at this late state that he did not agree with the stipulation of probable cause. Any controversy on this issue simply means that Plaintiff cannot prove that the proceedings were terminated in his favor, since the documented

> evidence of dismissal was with a stipulation of probable
> cause.

This appeal followed.

STANDARD OF REVIEW

When a trial court grants a motion for summary judgment, the standard of review for the appellate court is *de novo* because only legal issues are involved. *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991) (citations omitted). A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings. *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955). "If the summary judgment is sustainable on any basis, it must be affirmed." *Fischer v. Fischer*, 197 S.W.3d 98, 103 (Ky. 2006).

## ANALYSIS

On appeal, Mekuria argues the circuit court erred in determining the stipulation of probable cause on his March 9, 2015, judgment of dismissal was fatal to his malicious prosecution claim against Officer Martin. He also argues it was improper for the circuit court to dismiss his vicarious malicious prosecution claims against Conrad and Bolton based upon qualified immunity. As to his latter argument, it is generally true that qualified immunity is not a valid defense to a claim of malicious prosecution. A malicious prosecution action may be established by showing that:

> 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;
>
> 2) the defendant acted without probable cause;
>
> 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based;
>
> 4) the proceeding, except in *ex parte* civil actions, terminated in favor of the person against whom it was brought; and
>
> 5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016).

Considering those elements, qualified immunity logically cannot apply to this type of claim: "[I]f a plaintiff can prove that a police officer acted with malice, the officer has no immunity; if the plaintiff cannot prove malice, the officer needs no immunity." *Id*. at 5.

However, it is apparent from face of the circuit court's September 20, 2016, order of partial dismissal that the circuit court regarded Mekuria's *vicarious* malicious prosecution claims against Conrad and Bolton as repackaged versions of his claims against those individuals for negligent hiring and negligent supervision; and that it was simply treating them as such by dismissing those claims on the basis of qualified immunity. *See Yanero*, 65 S.W.3d at 528 ("Public officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those employed by them if they have employed persons of suitable skill."). Considering that Mekuria's complaint simply alleged Conrad and Bolton acted at all relevant times as supervisors or policymakers, but that it otherwise made no allegation that Conrad or Bolton acted maliciously or had a hand in initiating the criminal proceedings against Mekuria, we discern no reason why Mekuria's claims should not have been regarded in that manner.

In any event, because there is another reason to affirm the circuit court's judgment, it is unnecessary to address whether the pleadings or the record

supported the application of qualified immunity in this instance.[5]  Specifically,

Mekuria's malicious prosecution claims against Conrad, Bolton, and Officer

Martin were equally untenable due to the probable cause stipulation in the district

court's March 9, 2015, order of dismissal.  As explained in *Burkhead v. Davis*, 505

S.W.3d 784, 788 (Ky. App. 2016):

> In an action for malicious prosecution, a movant
> must show, among other things, lack of probable cause in
> the initiation of the prior judicial proceeding.  *Broaddus
> v. Campbell*, 911 S.W.2d 281, 283 (Ky. App. 1995)
> (citing *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky.
> 1981)).  In *Broaddus*, this Court concluded Broaddus had
> stipulated probable cause in exchange for dismissal of an
> indictment against him and such stipulation barred a
> subsequent civil action for malicious prosecution.  *Id*.
> The *Broaddus* Court also observed at the time Broaddus
> made the agreement, he could have structured the bargain
> to preserve a future claim for malicious prosecution
> against the complaining witness.  *Id*. at 284.

Further elaborating upon this rule, this Court explained that a

stipulation of probable cause would defeat a subsequent malicious prosecution

action; and that a trial court is "not at liberty to simply disregard an otherwise

validly entered, unchallenged and long-final order of another court."  *Id*. at 789.

Here, in summarily dismissing Mekuria's malicious prosecution claim against

Officer Martin, the circuit court properly applied this rule.

---

[5] "[W]e, as an appellate court, may affirm the trial court for any reason sustainable by the record."  *Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991).

The circuit court also explained that even if Mekuria could be permitted to set aside the probable cause stipulation in the district court's March 9, 2015, order, he had made no attempt to do so, and had otherwise produced no evidence during the approximate four-year pendency of his action – not even an affidavit in response to Officer Martin's motion for summary judgment[6] – in support of his claim that he had not consented to the probable cause stipulation. Nor, for that matter, had he adduced evidence that Officer Martin had acted with malice. That, too, justified summary dismissal. As noted, the party opposing a summary judgment motion has the burden to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc.*, 807 S.W.2d at 482 (citations omitted).

Mekuria also takes issue with the circuit court's use of the word "estopped" to describe why it dismissed his claim on this basis, but the circuit court's meaning was obvious: he had been given approximately four years to gather evidence in support of his claim, and it believed four years was enough. We find no error in that respect. "There is no requirement that discovery be

[6] In his brief, Mekuria states there is "information in the record establishing the trial [sic] was advised that any stipulation of probable cause by his criminal defense lawyer was without his knowledge or consent." In support, he cites "TR 69-79, 128-139." Those citations relate to his responses to the joint motion to dismiss and Officer Martin's motion for summary judgment. To the extent that either of his responses included "information in the record establishing" that "any stipulation of probable cause by his criminal defense lawyer was without his knowledge or consent," that "information" consists entirely of unsupported arguments from his attorney, and "the arguments of counsel are not evidence." *Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009).

-19-

completed, only that the non-moving party have 'had an opportunity to do so.'" *Carberry v. Golden Hawk Transp. Co.*, 402 S.W.3d 556, 564 (Ky. App. 2013) (citation omitted).

Lastly, Mekuria argues that if probable cause stipulations legally foreclose claims of malicious prosecution, then the law should be changed. We are not at liberty to do so, however, particularly where our Supreme Court has maintained the validity of that principle. *See, e.g.*, *Papa John's Intern., Inc. v. McCoy*, 244 S.W.3d 44, 54 (Ky. 2008) (explaining a probable cause stipulation "would have, of course, defeated McCoy's malicious prosecution claim as to all parties") (citing with approval *Broaddus v. Campbell*, 911 S.W.2d 281, 283-84 (Ky. App. 1995)). "As an intermediate appellate court, this Court is bound by published decisions of the Kentucky Supreme Court." *Kindred Healthcare, Inc. v. Henson*, 481 S.W.3d 825, 829 (Ky. App. 2014); *see also* SCR[7] 1.030(8)(a).

## CONCLUSION

In light of the foregoing, we AFFIRM.


ALL CONCUR.

---

[7] Kentucky Supreme Court Rules.

BRIEF FOR APPELLANT:

David B. Mour
Louisville, Kentucky

BRIEF FOR APPELLEES:

Michael J. O'Connell
Jefferson County Attorney

J. Denis Ogburn
Assistant Jefferson County Attorney
Louisville, Kentucky