RENDERED:  MAY 29, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0498-MR

HARVEY PELFREY; DANIEL
SHOEMAKER; DEBBIE
ALEXANDER; HARLEY
CONKRIGHT; JESSE JONES; JULIE
ADAMS; RANDALL ROSS; AND
UNKNOWN EMPLOYEES, AGENTS,
AND/OR REPRESENTATIVES OF
THE THREE FORKS REGIONAL
JAIL                                                                      APPELLANTS


|  | APPEAL FROM LEE CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE MICHAEL DEAN, JUDGE |
|  | ACTION NO. 19-CI-00124 |


THE ESTATE OF STEVEN DEWEY
MCDOWELL, BY AND THROUGH
BRENDA ROBERTS, AS
ADMINISTRATRIX                                                   APPELLEE


OPINION
REVERSING IN PART AND DISMISSING IN PART

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; COMBS AND A. JONES, JUDGES.

THOMPSON, CHIEF JUDGE:  Harvey Pelfrey, Daniel Shoemaker, Debbie Alexander, Harley Conkright, Jesse Jones, Julie Adams, Randall Ross, and Unknown Employees, Agents and/or Representatives of the Three Forks Regional Jail (Appellants) appeal from an order of the Lee Circuit Court denying their motion for summary judgment.  Some of the Appellants argue that they are entitled to summary judgment because their use of oleum capsicum (OC) to restrain inmate Steven Dewey McDowell was discretionary rather than ministerial, thus entitling them to qualified official immunity.  Other Appellants argue that they are entitled to summary judgment because no evidence was offered supporting the claims against them.  After careful review of the record and the law, we reverse in part the order on appeal, and dismiss in part certain claims of error which are not properly before us.

## FACTS AND PROCEDURAL HISTORY

On March 27, 2019, Steven Dewey McDowell (McDowell) was incarcerated at the Three Forks Regional Jail (Three Forks) in Beattyville, Kentucky.  On March 30, 2019, other inmates reported to jail staff that McDowell was hallucinating, hearing voices, thought someone was trying to hurt him and "acting crazy."  In response, at about 5:50 p.m., jail staff moved McDowell to a medical observation cell.  McDowell told Officer Shoemaker that he, McDowell, was withdrawing from Xanax.  Shoemaker told his supervisor, Captain Debbie

-2-

Alexander, who passed this information on to nurse Julie Adams. Adams told staff to begin detox procedures. Appellee alleges that McDowell never received a medical or psychiatric evaluation.

At 11:23 p.m., deputies opened the cell where McDowell was being held in order to allow another inmate to enter the cell. When the door was opened, McDowell walked out of the cell. It is disputed whether he suddenly forced his way out of the cell, or simply walked out without any threats or physical contact. In either event, McDowell then ignored repeated commands from several staff members to return to his cell. Over the next few minutes, deputy jailers Randall Ross, Jesse Jones, and Harley Conkright sprayed McDowell with OC in order to force his compliance. McDowell was largely unaffected by the OC, and stood or walked in a hallway and attempted to make a phone call.

McDowell complied with the officers after being told that if he sat down, he would not be sprayed again. Officers told McDowell to enter a shower to rinse off the OC spray. McDowell was noncompliant. He stood and moved toward a door that had been opened to ventilate the area. After continuing to refuse to sit down, Conkright sprayed McDowell again. McDowell then became compliant and entered the shower at 11:37 p.m.

After rinsing off the OC spray in the shower, McDowell was returned by officers to his cell around midnight. Video shows McDowell walking normally

and not acting out or arguing with staff. About 10 minutes later, at 12:10 a.m., an officer looked into McDowell's cell and saw him lying on the floor. After determining that he needed to be resuscitated, staff began CPR on McDowell and summoned EMS. McDowell was later pronounced deceased at the scene.

On November 22, 2019, the Estate of Steven Dewey McDowell, by and through Michael McDowell, as Administrator (the Estate), filed the instant action in Lee Circuit Court alleging negligence; use of excessive force/assault and battery; negligent hiring, training, and supervision; negligent medical care; violations of the Kentucky Constitution; and, violations of Kentucky Administrative Regulations and Kentucky Revised Statutes (KRS) Chapter 441 that proximately resulted in McDowell's wrongful death. The complaint asserted among other claims that Three Forks violated its own policies and procedures by failing to provide a medical evaluation to McDowell after the OC spray was used. Appellees would later assert that the officers were using OC spray in violation of Three Forks' policy, which required written permission for staff to carry and use OC spray. Three Forks allegedly had not given written permission prior to the events at issue.

On January 1, 2020, Appellants filed a partial motion per Kentucky Rules of Civil Procedure (CR) 12.02 to dismiss the complaint as against Three Forks and all defendants in their official capacities. On February 10, 2020, the

-4-

circuit court granted the motion. As a basis for the ruling, the court ruled that 1) County governments are cloaked with sovereign immunity; 2) Three Forks is an arm of County government; and, 3) suits against jail officials acting in their official capacities were merely another way of suing a County government. The action continued against the defendants in their individual capacities.

Discovery continued over the next four years. On May 2, 2024, Appellants in their individual capacities filed a motion for summary judgment pursuant to CR 56. In support of the motion, they argued that allegations regarding constitutional violations and Kentucky Administrative Regulations do not provide a private right of action. Further, they asserted that Appellants were entitled to qualified official immunity under the excessive use of force and negligent medical treatment claims because their acts were discretionary.

On August 9, 2024, the Lee Circuit Court entered an order denying Appellants' motion for summary judgment. The court ruled that to the extent the policies and procedures of Three Forks were violated, the jail employees' actions in their private capacities were ministerial rather than discretionary; therefore, they were not protected by qualified immunity. It also found that, though Appellants argued that the use of OC and lack of treatment were not the cause of McDowell's

death,[1] Appellee's expert witness disagreed which created an issue of fact as to causation on the wrongful death claim. This appeal followed.[2]

## STANDARD OF REVIEW

This is an interlocutory appeal from the denial of a motion for summary judgment. While the denial of a motion for summary judgment is interlocutory and generally not appealable, *Transportation Cabinet, Bureau of Highways, Commonwealth of Kentucky v. Leneave*, 751 S.W.2d 36, 37 (Ky. App. 1988), an exception is found where the basis for the motion is a claim of immunity. *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009). This is because immunity entitles its "possessor to be free from the burdens of defending the action, not merely . . . from liability." *Id.* (internal quotation marks and citations omitted). Therefore, the scope of this review will be limited to the denial of Appellants' claims of entitlement to qualified official immunity, with no consideration of substantive issues. *Baker v. Fields*, 543 S.W.3d 575, 577-78 (Ky. 2018).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file,

---

[1] Dr. Meredith Frame determined that McDowell's death resulted from atherosclerotic cardiovascular disease and morbid obesity.

[2] On May 11, 2026, Brenda Roberts was substituted as Administratrix of the Estate of Steven Dewey McDowell by way of order of this Court.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Id.* "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.* Finally, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

## **ARGUMENTS AND ANALYSIS**

### ROSS, JONES, AND CONKRIGHT

Ross, Jones, and Conkright were the only Appellants to use OC against McDowell. We will first address their claim of entitlement to qualified official immunity based on their use of OC. They argue that the Lee Circuit Court committed reversible error in denying their motion for summary judgment as to

their defense of qualified official immunity. Directing our attention to *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001), they argue that qualified official immunity protects public officers and employees from tort liability for the negligent performance of discretionary acts*: i.e.*, those involving the exercise of discretion and judgment, which are made in good faith and within the scope of the employees' authority. Appellants maintain that their attempts to control McDowell, including their necessary and reasonable use of OC, were made in good faith and within the scope of their authority; therefore, their acts fall squarely within the elements of *Yanero* entitling them to qualified official immunity. Appellee responds in part by arguing that Appellants' appeal is untimely.[3]

*Mattingly v. Mitchell*, 425 S.W.3d 85 (Ky. App. 2013), is informative in addressing the denial of summary judgment based on a claim of qualified official immunity. In *Mattingly*, William Mattingly was working as an on-duty Louisville Metro Police Department (LMPD) Officer when he observed a BMW automobile operated by Gabriel Nelson speeding on the Watterson Expressway. Mattingly activated the blue lights on his marked police vehicle and a high-speed pursuit ensued. An off-duty officer in another vehicle observed the pursuit, but did

---

[3] On April 25, 2025, this Court entered an order directing Appellants to show cause as to why this appeal should not be ruled untimely. Appellants responded on May 14, 2025. On July 9, 2025, this Court entered an order finding that sufficient cause was shown for additional time to file the tendered prehearing statement. In their Reply Brief, Appellants direct our attention to the July 9, 2025, order as dispositive of Appellee's argument on this issue.

not attempt to stop the BMW as he believed the pursuit was against LMPD policy.

After Mattingly disengaged the chase, the BMW crashed into a vehicle operated by

Barbara Cowan, which injured Cowan and killed Cowan's passenger, Latonia

Mitchell.

The Estate of Latonia Mitchell filed a lawsuit against Mattingly

alleging negligence and substantive due process violations under 42 U.S.C.[4] §

1983. Mattingly defended in part based on qualified official immunity. The

Jefferson Circuit Court found that Mattingly's operation of his police vehicle

during the pursuit was ministerial in nature; therefore, he was not entitled to

qualified official immunity. Specifically, it determined that Mattingly violated

LMPD policy by conducting a pursuit in wet conditions with a minimal ability to

apprehend Nelson. It also ruled that a material issue of fact remained regarding

whether Mattingly's pursuit was the proximate cause of the collision.

Mattingly appealed to this Court. A panel of this Court agreed with

the circuit court in finding that Mattingly violated LMPD policy in failing to

terminate his pursuit of Nelson. As such, Mattingly was not entitled to qualified

official immunity. On the issues of summary judgment, it again agreed with the

circuit court that a genuine issue of material fact remained as to whether

Mattingly's actions were the proximate cause of Mitchell's death. We will address

---

[4] United States Code.

the issues before us in a similar manner: first, whether the Lee Circuit Court correctly determined that Appellants were not entitled to qualified official immunity; and, second, whether they were entitled to summary judgment.

> "Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed. Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity. . . . Similarly, when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled . . . . But when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, (2) in good faith; and (3) within the scope of the employee's authority. An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed. Qualified official immunity is an affirmative defense that must be specifically pled.

*Yanero*, 65 S.W.3d at 521-22 (citations omitted).

Thus, to determine if Appellants Ross, Jones, and Conkright were entitled to qualified official immunity, we must consider whether 1) their acts of

-10-

using OC to control McDowell were discretionary; 2) those acts were made in good faith; and 3) the acts were within the scope of their employment. *Id.* Because immunity is a question of law, we will examine it *de novo. Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006), *as corrected* (Sep. 26, 2006). We will now consider each element in turn.

1 - <u>DISCRETIONARY ACTS</u>

"Categorizing actions as either the performance of a discretionary duty or the performance of a ministerial duty is vexing to litigants and courts alike." *Patton v. Bickford*, 529 S.W.3d 717, 724 (Ky. 2016). "A somewhat rudimentary expression of the distinction between discretionary and ministerial acts provides that [p]romulgation of rules is a discretionary function; enforcement of those rules is a ministerial function." *Id.* (internal quotation marks and citation omitted). *Yanero* defines discretionary acts as "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment[.]" *Yanero*, 65 S.W.3d at 522 (citation omitted). In contrast, a "ministerial duty is one that requires only obedience to the orders of others." *Patton*, 529 S.W.3d at 724 (internal quotation marks and citation omitted). And to further demonstrate the vexing nature of this distinction, "[e]ven a ministerial act requires some discretion." *Id.*

Guidance in applying this distinction to jail officials is found in *Rowan County*, 201 S.W.3d 469. In *Rowan County*, a prisoner brought a negligence action against Rowan County and two jailers after he was struck by a falling tree during a voluntary roadside clearing project. In considering whether the jailers' acts in supervising the prisoners were discretionary or ministerial, the Kentucky Supreme Court examined many cases holding that certain acts were discretionary while others were found to be ministerial. The Supreme Court determined that jailers' supervisory authority over prisoners falls "within the scope of their discretionary authority," *Rowan County*, 201 S.W.3d at 491, and was "as discretionary a task as one could envision." *Id.* at 480.

Turning to the matter before us, Appellants Ross, Jones, and Conkright were vested with discretion in how to control McDowell, who left his cell without permission, walked toward a door that had been opened to ventilate the area, failed to go to the shower area, and was otherwise noncompliant. Rather than going "hands on," Ross, Jones, and Conkright issued repeated verbal commands which McDowell ignored. They then used OC to gain McDowell's compliance. These acts fall squarely within their authority to supervise and control inmate behavior. Based on *Yanero*, *Patton*, and *Rowan County*, we conclude that the use of OC by Appellants Ross, Jones, and Conkright was discretionary rather than ministerial.

## 2 - <u>GOOD FAITH</u>

The next element required for a finding of qualified official immunity is whether Appellants Ross, Jones, and Conkright acted in good faith. Good faith is not so much an element to be proven, but is found where there is an absence of proof of bad faith. "Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Rowan Cnty.*, 201 S.W.3d at 481 (quoting *Yanero*, 65 S.W.3d at 523). "Thus, the proof required necessarily focuses on 'bad faith,' rather than 'good faith.'" *Id.*

Here, and per *Rowan County* and the related authority, Appellants Ross, Jones, and Conkright made a *prima facie* showing that their supervision of McDowell and use of OC were within the scope of their discretionary authority. As such, the burden shifted to Appellee to establish by direct or circumstantial evidence that these discretionary acts were not performed in good faith. *Id.* Appellee has not met this burden. Though Appellee argues that Ross, Jones, and Conkright used too much OC and for too long, no persuasive evidence was adduced that Ross, Jones, and Conkright acted in bad faith. Again, the uncontested facts are that McDowell left his cell without permission and repeatedly failed to comply with verbal commands. It was only then that Ross, Jones, and Conkright

used OC to gain McDowell's compliance. They stopped using OC when McDowell became compliant.

In attempting to demonstrate that jail officials acted in bad faith, Appellee argues that jail policy did not permit deputy jailers to carry OC spray in the jail unless they had written authorization from Administrator Pelfrey. Appellee contends that no such written authorization exists, thus demonstrating Appellants' bad faith in their use of OC. Pelfrey, however, stated in deposition that Ross, Jones, and Conkright were certified in the use of OC and that he, as Administrator, considered this certification to satisfy the requirement of written authorization. Because Ross, Jones, and Conkright were certified in the use of OC, and as they carried OC in the jail with the knowledge and consent of Pelfrey, we do not conclude that Appellee's argument rebuts Appellants' *prima facie* showing that their supervision of McDowell and use of OC were within the scope of their discretionary authority.

Appellee also asserts that Appellants' use of OC was excessive, thus demonstrating Appellants' bad faith. The uncontested evidence, however, is that Appellants stopped using OC when McDowell became compliant with their commands. Appellee has not rebutted Appellants' *prima facie* showing that their use of OC was within the scope of their discretionary authority and thus made in good faith.

-14-

Appellee goes on to argue that Appellants' failure to provide a medical evaluation to McDowell after he was sprayed with OC, and in violation of jail policy, constitutes additional proof that they were acting in bad faith. The record demonstrates, however, that only 10 minutes elapsed between the time that McDowell was returned to his cell around midnight and when a deputy jailer looked into McDowell's cell and saw him lying on the floor. Staff immediately began CPR and summoned EMS. We do not conclude that the approximately 10-minute lapse between McDowell's return to his cell, and the observation that he was lying on the floor, constitute a showing of bad faith for purposes of *Yanero*.

3 - ACTS MADE WITHIN THE SCOPE OF THEIR AUTHORITY

Appellee does not contest that Appellants' acts were made within the scope of their authority. The record amply demonstrates that Ross, Jones, and Conkright's use of OC fell within the scope of their discretionary authority to supervise and control the inmate population.

Ross, Jones, and Conkright's use of OC to control McDowell was 1) a discretionary act; 2) which was made in good faith; and, 3) within the scope of their authority. *Yanero*, 65 S.W.3d at 521-22. Accordingly, they are entitled to qualified official immunity.[5]

---

[5] We agree with Appellants that after concluding that they are entitled to qualified official immunity, McDowell's cause of death is immaterial for purposes of the claims against them. *See Wilson v. England*, 705 S.W.3d 35, 40 (Ky. App. 2024), *disc. rev. denied* (Feb. 13, 2025).

ADMINISTRATOR PELFREY

We next turn to whether Administrator Pelfrey is entitled to qualified official immunity. Pelfrey was not working when the incident occurred. Appellants argue that it appears the only reason he is part of this litigation is that he was Jail Administrator at Three Forks at the time of these events. Appellee argues that Pelfrey, as Jail Administrator, is not entitled to qualified official immunity because he breached his ministerial duty to adequately train jail staff on jail policies and procedures regarding the use of OC spray and medical evaluations by medical professionals after the use of OC spray.

Again, we must consider the question of whether Pelfrey engaged in 1) a discretionary act; 2) which was made in good faith; and, 3) within the scope of his authority. *Yanero*, 65 S.W.3d at 521-22. Appellee asserts that Pelfrey breached a duty to make and enforce rules regarding use of OC and medical evaluations. "[R]ule-making is an inherently discretionary function." *Rowan Cnty.*, 201 S.W.3d at 478 (citing *Yanero*, 65 S.W.3d at 529). "As an intermediate appellate court, this Court is bound by published decisions of the Kentucky Supreme Court." *Kindred Healthcare, Inc. v. Henson*, 481 S.W.3d 825, 829 (Ky. App. 2014); SCR[6] 1.030(8)(a). We conclude therefore that Pelfrey's rule-making and enforcement functions are discretionary acts for purposes of *Yanero.*

---

[6] Rules of the Supreme Court of Kentucky.

As to the second element of *Yanero*, *i.e.*, good faith, and as noted above, "[o]nce the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Rowan Cnty.*, 201 S.W.3d at 481. Appellee has not met this burden. "[A] single tragic incident involving jail personnel is not sufficient to establish a claim of inadequate training[.]" *Rowan Cnty.*, 201 S.W.3d at 479 (quoting *Franklin County, Ky. v. Malone*, 957 S.W.2d 195, 200 (Ky. 1997), *reversed on other grounds by Yanero*, 65 S.W.3d 510). Further, we find no basis for concluding that jail personnel improperly failed to provide medical care to McDowell during the brief period after which he was returned to his cell and before being found on the floor. There simply was not enough time for jail personnel to act.

The last issue with respect to Pelfrey is whether the acts complained of were within the scope of his authority. *Yanero*, 65 S.W.3d at 521-22. The record amply demonstrates that Pelfrey, as Administrator, had rule-making authority with respect to both the conduct of jail employees and inmates. We conclude from the foregoing that Pelfrey's rule-making authority as to the use of OC by prison staff, and their required medical response to the use of OC, were

discretionary acts made in good faith and within the scope of his authority. *Id.* As such, we hold that Pelfrey is entitled to qualified official immunity.

### ALEXANDER, SHOEMAKER, AND ADAMS

Next, we will consider Appellants' claims that Alexander, Shoemaker, and Adams are entitled to summary judgment. Alexander was the shift commander during the events described in the amended complaint. Shoemaker was a deputy to whom McDowell stated that he was withdrawing from Xanax. When McDowell told Shoemaker that he was experiencing withdrawal symptoms, Shoemaker alerted Alexander, who in turn told nurse Adams. According to Alexander's deposition, Adams then directed staff to initiate detox protocols.

In their motion for summary judgment at p.12, Appellants argued that Alexander, Shoemaker, and Adams were not negligent in their conduct as it relates to McDowell. They asserted that Alexander did not use any force on McDowell and left the area when the incident started; that Shoemaker never touched McDowell and never used OC; and, that nurse Adams was not working when McDowell was sprayed with OC. As such, Appellants argued in their motion for summary judgment that Appellee could not prevail if the matter proceeded to trial as the record was insufficient to support a claim of negligence. Based on this, they argued that Alexander, Shoemaker, and Adams were entitled to summary judgment.

As addressed above, while the denial of a motion for summary judgment is interlocutory and generally not appealable, *Leneave*, 751 S.W.2d at 37, an exception is found where the basis for the motion is a claim of immunity. *Prater*, 292 S.W.3d at 886. We may not consider substantive issues on an interlocutory appeal from summary judgment. *Baker*, 543 S.W.3d at 577-78.

Here, Alexander, Shoemaker, and Adams are arguing that the record does not support a claim of negligence. This is a substantive argument outside the scope of the exception; therefore, we are without authority to consider these arguments on an interlocutory appeal from the denial of summary judgment. *Id.*

## CONCLUSION

Appellants Ross, Jones, Conkright, and Pelfrey engaged in discretionary acts in good faith and within the scope of their authority, and are entitled to qualified official immunity. We may not consider the negligence claims of Alexander, Shoemaker, and Adams as these are substantive arguments outside the narrow exception to the general prohibition against interlocutory appeals from summary judgment. For these reasons, we reverse the order of the Lee Circuit Court as to Ross, Jones, Conkright, and Pelfrey, and hold that they are entitled to qualified official immunity. They are entitled to summary judgment. *Steelvest, Inc.*, 807 S.W.2d at 480. We dismiss that portion of the appeal addressing the

-19-

substantive claims of Alexander, Shoemaker, and Adams, and remand the matter to the Lee Circuit Court for further proceedings.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Andrew D. DeSimone
Maureen C. Malles
Jonathan M. Gifford
Lexington, Kentucky

BRIEF FOR APPELLEE:

L. Dustin Riddle
Teddy L. Flynt
Salyersville, Kentucky

Thomas P. Jones
Beattyville, Kentucky