RENDERED: NOVEMBER 2, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000136-DG

ANGELA FORD; ANGELA FORD, P.S.C.; ATI VENTURES, LLC; AND VILLA PARIDISIO, LLC                                                           **APPELLANTS**

V.
ON REVIEW FROM COURT OF APPEALS
CASE NOS. 2014-CA-000762 & 2014-CA-00791
FAYETTE CIRCUIT COURT NO. 12-CI-03758

HAROLD BAERG, JR.; KATHLEEN M. BAERG; AND FAISAL SHAH                                                           **APPELLEES**

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

### <u>AFFIRMING AND REMANDING</u>

Among the elements required under our law to prove the tort of conversion, the plaintiff must first prove that she has legal title to the converted property and then prove the right to possess the property at the time of the alleged conversion. Attorney Angela Ford filed this civil action asserting the tort of conversion, claiming that Harold and Kathleen Baerg and Fasal Shah should be required to disgorge large sums of money that Ford claimed had been stolen from her by her attorney, Seth Johnston, and transferred by him to the Baergs and Shah. The trial court granted summary judgment in favor of Ford, but the Court of Appeals reversed the trial court's judgment, holding that Ford failed to prove the essential elements of conversion

mentioned above. On discretionary review, we affirm the opinion of the Court of Appeals and remand this case to the trial court with direction to grant summary judgment to the Baergs and to Shah.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Attorney Angela Ford received a large sum of legal fees for her work in the notorious fen-phen lawsuit.[1] Ford hired attorney Seth Johnston to help her form several LLCs to manage and secrete these funds. Johnston then formed two limited liability companies (LLCs), Villa Paridisio and ATI Ventures, to own and manage the funds. Ford placed some funds into Villa Paridisio's PNC Bank account and some into ATI Ventures's Republic Bank account. Johnston, according to the record available to us, was the signatory on both LLCs' accounts, later transferring Villa Paridisio's funds to BB&T, also an account where Johnston was named the sole signatory as revealed by the available record.

Johnston also represented Harold and Kathleen Baerg at this time. The Baergs wished to engage in an I.R.C. § 1031 like-kind property exchange. And they wanted Johnston to hold the proceeds from their sold property in an intermediary company, Emerald Riverport, solely controlled by Johnston, until they purchased new property to complete the § 1031 transaction.

Unknown to Ford and the Baergs, Johnston was involved in an extensive scheme of fraud, theft, and illegal drug distribution. Johnston spent the Baergs' proceeds from the sale of their property, placed in Emerald Riverport,

---

[1] *See, e.g., Abbott v. Chesley*, 413 S.W.3d 589(Ky.2013)

for his own scheme. When the Baergs wanted the money to purchase new property under their § 1031 transaction, Johnston wire-transferred funds from Ford's Villa Paridisio account to pay the seller of the new property. Johnston also used funds from Ford's ATI Ventures account to purchase a cashier's check, which he then negotiated to Zafar Nasir. Nasir later negotiated that cashier's check to Faisal Shah, who deposited the check's funds into his personal bank account.

After discovering these fraudulent dealings, Ford filed the underlying action against Johnston, the Baergs, and Shah for conversion. Ford moved for summary judgment against all parties, and the trial court granted Ford's motion and found all parties liable. Shah and the Baergs appealed, and the appellate court reversed the trial court's findings with respect to them, finding that Ford could not prove the first two elements of conversion[2]—specifically, that Ford lacked the requisite legal title or possessory rights to the allegedly converted property. This court took this case on discretionary review.

---

[2] The elements of conversion are: (1) the plaintiff had legal title to the converted property; (2) the plaintiff had the right to possess the property at the time of the conversion; (3) the defendant exercised dominion over the plaintiff's property in a way that deprived the plaintiff of its use and enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff demanded return of the property and the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damages from the loss of the property. *Kentucky Ass'n of Ctys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 n.12 (Ky. 2005).

3

## II. ANALYSIS.

### A. Standard of Review.

We review a trial court's granting of a party's summary judgment motion de novo.[3] "On appeal, '[t]he standard of review...of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law.'"[4]

### B. Ford Cannot Satisfy the First Two Elements of Conversion.

The Baergs correctly argue that Johnston, as the sole signatory on the Villa Paridisio bank accounts at PNC Bank and BB&T, possessed, at the least, apparent authority over those bank accounts. Shah argues the same—Johnston remained the sole signatory on the ATI Ventures bank account at Republic Bank, and thus Johnston possessed apparent authority over that bank account. The Baergs and Shah argue that, through his apparent authority, Johnston divested Ford of legal title and possessory rights when Johnston completed the wire transfer in the Baergs' case and the negotiation and deposit of the cashier's check in Shah's case.

As stated previously, the first two elements of conversion require the plaintiff, Ford, to (1) have legal title over the property in question and (2) the right to possess the property at the time of the conversion. In other words, if

---

[3] *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 372 (Ky. 2014).

[4] *Id.* (quoting *Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 49 (Ky. 2002)).

Ford does not possess legal title over or the right to possess the property in question, her conversion claims against the Baergs and Shah fail.

### 1. *Johnston Possessed Apparent Authority to Act on Behalf of Ford When Managing her LLCs' Bank Accounts.*

A *signatory* is "A person or entity that signs a document, personally or through an agent, and thereby becomes a party to an agreement."[5] For the purposes of this case, the most important feature of designation as a signatory is the vesting of *signatory authority* in the *signatory*. *Signatory authority* is the "License to make a decision, esp. to withdraw money from an account or to transfer a negotiable instrument."[6] In other words, when an individual is designated as a *signatory*, that individual possesses some type of authority to act on behalf of the principal who designated the individual as a *signatory*.

Recall that Ford designated Johnston as a *signatory* on both her Villa Paridisio and ATI Ventures bank accounts. So Johnston possessed some type of authority over these accounts. The Baergs and Shah correctly argue that, at the very least, Johnston possessed apparent authority to transfer funds from these accounts to third parties, thereby eventually validly divesting Ford of any legal title or right to possess the transferred funds in both cases.

"Apparent authority...is not actual authority but is the authority the agent is held out by the principal as possessing. It is a matter of appearances

---

[5] *Signatory*, Black's Law Dictionary (10th ed. 2014).

[6] *Signatory Authority*, Black's Law Dictionary (10th ed. 2014).

on which third parties comes to rely."[7] "An agent is said to have apparent authority to enter transactions on his or her principal's behalf with a third party when the principal has manifested to the third party that the agent is so authorized, and the third party reasonably relies on that manifestation."[8] "That a principal did not approve an individual transaction does not change the fact that an agent can have apparent authority to make the signature and thus engage in the transaction, at least when viewed from the perspective of the bank."[9]

Without question, as a signatory, Johnston possessed the authority to transfer funds from the bank accounts of Villa Paridisio and ATI Ventures to third parties from the perspective of BB&T and Republic Bank. This is the entire reason an individual designates a signatory on a bank account—to vest authority in that individual to make transfers from one's bank account and to have the bank recognize that authority. BB&T and Republic Bank reasonably relied on Johnston's status as a signatory when transferring funds from the LLCs' bank accounts to the respective third parties at Johnston's direction. In sum, there is no question that Johnston possessed apparent authority to act on behalf of Ford when managing her LLCs' bank accounts.

---

[7] *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 499 (Ky. 2014) (quoting *Mill St. Church of Christ v. Hogan*, 785 S.W.2d 263, 267 (Ky. App. 1990)).

[8] *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 594 (Ky. 2012); *see also* Restatement (Third) of Agency § 2.03 (2006) ("Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.").

[9] *Mark D. Dean*, 434 S.W.3d at 500.

## 2. *Johnston's Apparent Authority Allowed Title to Transfer Validly from the LLCs' Bank Accounts to Respective Third Parties.*

As a signatory, Johnston committed two transfers vital to determining the end result of this case. Regarding the Baergs, Johnston wire-transferred funds from Ford's Villa Paridisio account to pay the seller of the new property. Regarding Shah, Johnston used funds from Ford's ATI Ventures account to purchase a cashier's check, which he later negotiated to Zafar Nasir, who then negotiated the check to Shah, who deposited the funds from the cashier's check into his personal bank account.

### a. *The Wire Transfers.*

Regarding Johnston's wire transfer from Villa Paridisio to the seller's designated third parties, as a matter of law, "Title to funds in a wire transfer passes to the beneficiary bank upon acceptance of a payment order."[10] So when Johnston validly ordered BB&T to wire money to the seller's designated third parties, the completion of the transfer of valid title occurred upon those third parties acceptance by the payment order.[11] At that point in time, Ford lost all her claim to title and possession. Because Ford no longer has title over or the right to possess the funds, Ford cannot satisfy the first two elements of her conversion claim against the Baergs and her claim against them fails.

---

[10] *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1277 (11th Cir. 2003); 7 Anderson U.C.C. § 4A-209:7 (3d. ed.). Although only persuasive authority, *Regions Bank* has been heavily cited and relied upon by both parties and the Court of Appeals in this case. Clearly, if the receiving bank in the wire transfer "know[s] or [has] reasonable cause to believe that the property [has] been obtained through commission of a theft offense," then title would not validly pass. *Regions Bank*, 345 F.3d at 1277. Here, there is absolutely no evidence that the [bank] receiving Johnston's wire transfers had any knowledge or reason to believe that the transfers were fraudulent. So UCC Article 4A is not being used "as a shield for fraudulent activity." *Id.* at 1276.

[11] Again, Johnston possessed valid apparent authority to complete this transfer.

### b. The Negotiation of the Cashier's Check.

Regarding Johnston's purchase and negotiation of the cashier's check, Johnston validly possessed the ability to enforce the cashier's check because he validly purchased the cashier's check using Ford's funds through his apparent authority over Ford's ATI Ventures bank account.[12] Once Johnston negotiated the cashier's check to Nasir, Johnston's ability to enforce the cashier's check passed to Nasir.[13] Nasir then negotiated the check to Shah, who later deposited the funds into his personal account, at which point Ford lost all title and possessory rights in the funds.[14] Because Ford no longer has any possessory rights in the funds, she cannot satisfy the second element of a conversion action, and thus her claim fails.

### c. Cheapest Cost Avoider Principle.

With respect to Ford's claims against the Baergs and Shah, we assert a further justification for our holding in this unfortunate case. The "cheapest cost avoider" economic principle states, in the words of Judge Posner, "that the duty to avoid a loss should be placed on the party that can prevent the loss at

---

[12] There is an argument that once Johnston purchased the cashier's check, Ford lost possessory rights at that point in time. But as the Court of Appeals aptly noted, there is debate about this concept. *Cf.* Gregory E. Maggs *Determining the Rights and Liabilities of the Remitter of a Negotiable Instrument: A Theory Applied to Some Unsettled Questions*, 36 B.C.L. Rev. 619, 654-55 (1995). Because of this debate, and because this case is conclusively decided differently, we need not resolve this debate at this time.

[13] "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument...." KRS 355.3-203(2).

[14] When a general deposit is made by a bank's customer (account holder) at the bank, title to the general deposit passes from the depositor to the bank, with the bank undertaking a duty to repay. Ann Graham, Banking Law § 9.02[1] (1997); *Dean Witter Reynolds, Inc. v. Variable Annuity Life Ins. Co.*, 373 F.3d 1100, 1107-08 (10th Cir. 2004).

8

lower cost."[15] In this case, Ford was the party in the best position to prevent her loss. She entrusted Johnston with unconstrained authority to handle her funds. Had she properly vetted Johnston or monitored her accounts, she could have terminated his status as a signatory or never even have bestowed upon him sole signatory status, preventing her own loss. Ford's status as the cheapest cost avoider in this case further cements our holdings.

### d. Johnston is Not a "Thief" for Purposes of Determining Title Transfer.

Ford argues to us the well-established rule that "a robber or thief cannot as against the owner pass title to...stolen property, even to a bona fide purchaser for value"[16] when she insists that she never lost title to the funds eventually transferred to the Baergs and Shah. But Johnston is not a "thief" in this specific context—Johnston possessed apparent authority over Ford's LLCs' bank accounts by virtue of his signatory authority granted to him by Ford. And when Johnston exercised his authority over the accounts, it was as if Ford herself was the actor. So Johnston cannot be considered a "thief" in this context.

### III. CONCLUSION.

Angela Ford no longer possesses title to or a possessory interest in the funds transferred in the Baergs' case, nor does she possess an interest in the funds transferred in Shah's case. For those reasons, Ford cannot maintain a

---

[15] *Wachovia Bank, N.A. v. Foster Bancshares, Inc.*, 457 F.3d 619, 622 (7th Cir. 2006).

[16] *People's Nat. Bank v. Jones*, 61 S.W.2d 17, 19 (Ky. 1933); *See In re Newpower*, 233 F.3d 922, 929 (6th Cir. 2000); Restatement (Second) of Torts § 229 cmt. d. (1965); Bogert, Trust & Trustees § 476 (2d. ed. 1978).

conversion action against these parties, and her claim fails as a matter of law. We affirm the Court of Appeals in reversing the trial court's grant of Ford's motions for summary judgment and remand the case to the trial court with instructions to enter summary judgment in favor of the Baergs and Shah.

All sitting. All concur.


COUNSEL FOR APPELLANTS:

Angela Margaret Ford

Mindy Barfield
Brett Nolan
Dinsmore & Shohl, LLP

COUNSEL FOR APPELLEE FAISAL SHAH:

Stephen M. O'Brien III
David Coomer
Stephen M. O'Brien, III, PLLC

COUNSEL FOR APPELLEES KATHLEEN M. BAERG AND HAROLD BAERG JR.:

John F. Billings
John Nathanael Billings
Christopher L. Thacker
Stephen Wilson
Billings Law Firm, PLLC.