RENDERED:  JANUARY 24, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0131-MR

BEREA HEALTH AND
REHABILITATION, LLC A/K/A
BEREA HEALTHCARE, LLC;
BENJAMIN LANDA; BENT
PHILIPSON; BEREA REALTY
HOLDINGS, LLC; BLUEGRASS
PORTFOLIO MASTER TENANT,
LLC; DEBORAH PHILIPSON; ELI
GRINSPAN; KENNEDY KY
HOLDINGS, LLC; KENTUCKY
PARTNERS, LLC; KY EQUITY
PARTNERS, LLC; LIFESTAR
FAMILY HOLDINGS, LLC; MAYER
FISCHL; PAMELA BROOKS, IN HER
CAPACITY AS ADMINISTRATOR
OF BEREA HEALTH AND
REHABILITATION; PHILIPSON
FAMILY 2, LLC; PHILIPSON
FAMILY LIMITED LIABILITY
COMPANY; SENTOSACARE, LLC;
AND VALLEY STREAM OPERATOR
I, LLC D/B/A BLUEGRASS HEALTH                          APPELLANTS
PARTNERS


                    APPEAL FROM MADISON CIRCUIT COURT
v.                  HONORABLE COLE ADAMS MAIER, JUDGE
                         ACTION NO. 20-CI-00438

SANDRA HUFF, AS
ADMINISTRATRIX OF THE ESTATE
OF MARTHA BALDWIN,
DECEASED                                                                    APPELLEE


OPINION
AFFIRMING
AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND COMBS, JUDGES.

COMBS, JUDGE:  This appeal is taken from an order of the Madison Circuit

Court denying the motion of Appellants to compel arbitration in the context of a

care (nursing) home.  Appellants are:  Berea Health and Rehabilitation, LLC a/k/a

Berea Healthcare, LLC; Valley Stream Operator 1, LLC d/b/a Bluegrass Health

Partners; Berea Realty Holdings, LLC; Bluegrass Portfolio Master Tenant, LLC;

Philipson Family 2, LLC; Philipson Family, LLC; Sentosacare, LLC; Kennedy KY

Holdings, LLC; Kentucky Partners, LLC; KY Equity Partners, LLC; Lifestar

Family Holdings, LLC; Eli Grinspan; Benjamin Landa; Bent Philipson; Mayer

Fischl; and Pamela Brooks, in her capacity as administrator of Berea Health and

Rehabilitation (referred to collectively as the care home or the home).  The

Appellee is Sandra Huff, as Administratrix of the Estate of Martha Baldwin (the

Estate).

The circuit court concluded that the care home failed to carry its burden to prove the existence of a valid and enforceable arbitration agreement; that a subsequently executed power of attorney did not ratify provisions of the alleged agreement; or that a third-party-beneficiary theory was inapplicable. After our review, we affirm, and we remand for further proceedings.

Martha Baldwin was admitted to the Berea care home on October 22, 2019. On that date, Baldwin's daughter, Sandra Huff, signed Baldwin's admission agreement. The admission agreement included as its "Attachment S" a voluntary alternative dispute resolution agreement (the ADR agreement) containing provisions for mediation and binding arbitration. Baldwin did not sign any of the documents presented upon her admission; instead, each of them was signed by Huff and by Sydni Childers, the care home's director of admissions. The following week, Baldwin appointed Huff as her power of attorney. In this subsequent written instrument, Huff was granted specific authority to execute arbitration agreements.

On November 8, 2019, Baldwin was taken to a local hospital. She did not return to the care home. Thereafter, exercising her authority pursuant to the durable power of attorney, Huff timely filed a negligence action against the care home. On January 22, 2021, the care home filed a motion to compel arbitration.

Baldwin died before the court held a hearing on the motion. The lawsuit was duly revived.

By an order entered on January 3, 2024, the circuit court denied the motion to compel arbitration. It was not persuaded that the care home met its burden to prove the existence of a valid ADR agreement. While the court agreed that Huff was acting as Baldwin's representative when she was admitted to the care home, it concluded that no evidence showed that Baldwin delegated to Huff authority sufficient to bind her to the terms of an ADR agreement. It observed that Baldwin **had not yet appointed** Huff as her power of attorney at the time Huff signed the ADR agreement, and it concluded that the third-party-beneficiary doctrine did not apply.

The care home now appeals the order denying its motion.

On appeal, the care home argues that the circuit court erred by concluding that Huff lacked authority to bind her mother to an agreement to arbitrate a dispute between them. It contends that Huff had either actual, implied, or apparent authority to execute the ADR agreement on Baldwin's behalf. In the alternative, the home argues that Baldwin ratified her daughter's decision to sign the ADR agreement by executing the power of attorney only days later -- at a time when she retained the express ability to revoke her consent to arbitration. Finally,

the home argues that Baldwin was a third-party beneficiary of the arbitration contract.

Pursuant to provisions of KRS[1] 417.220(1)(a), an order denying a motion to compel arbitration is immediately appealable. *Kindred Healthcare, Inc. v. Henson*, 481 S.W.3d 825, 828-29 (Ky. App. 2014). *See also Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 340 (Ky. App. 2001).

While the courts generally favor enforcement of arbitration agreements, the validity of such an agreement remains a threshold matter which must be resolved first. *General Steel Corp. v. Collins*, 196 S.W.3d 18, 20 (Ky. App. 2006) (internal citations omitted). Pursuant to both the Kentucky Uniform Arbitration Act, KRS 417.045 *et seq.*, and the Federal Arbitration Act, 9 U.S.C.[2] §§ 1 *et seq.*, a party seeking to compel arbitration bears the burden of establishing the existence of a valid agreement to arbitrate. *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 590 (Ky. 2012). Whether a valid agreement exists is a question controlled by a state's laws pertaining to the rules of contract formation. *Id.* Thus, provisions of the federal act do **not** preempt state law contract principles -- including matters concerning the authority of an agent to enter into a contract.

---

[1] Kentucky Revised Statutes.

[2] United States Code.

*Kindred Healthcare,* 481 S.W.3d at 828-29 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31, 129 S. Ct. 1896, 1902, 173 L. Ed. 2d 832 (2009)).

The issues on appeal are questions of law. *Ping*, 376 S.W.3d at 590. Therefore, our review is *de novo. Conseco*, 47 S.W.3d at 340. In this case, the care home failed to produce sufficient evidence of a valid and enforceable ADR agreement between the parties.

We have defined agency as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *CSX Transportation, Inc. v. First National Bank of Grayson*, 14 S.W.3d 563, 566 (Ky. App. 2000) (quoting *McAlister v. Whitford*, 365 S.W.2d 317, 319 (Ky. 1962)). Actual authority arises from a direct, intentional grant of specific authority from a principal to an agent. *Kindred Healthcare,* 481 S.W.3d at 830. Implied authority is "actual authority *circumstantially proven* which the principal actually intended the agent to possess and includes such powers as are practically necessary to carry out the duties actually delegated." *Mill Street Church of Christ v. Hogan*, 785 S.W.2d 263, 267 (Ky. App. 1990) (emphasis added). Apparent authority is created where a principal holds out to others that the agent possesses certain authority that may not have been actually granted to the agent. *Ford v. Baerg*, 532 S.W.3d 638, 642 (Ky. 2017).

In her affidavit, Childers, the home's admissions director, explained her customary procedure: that without an executed power of attorney authorizing a relative to act on a resident's behalf, she "would obtain the resident's express, verbal consent for a designated person to act as the resident's representative." Although Childers remembered being present with Huff when Huff signed the ADR agreement, there is no indication that Baldwin was present. Moreover, Childers did not indicate in her affidavit that she actually met with Baldwin, who could have then expressed her assent for Huff to act as her representative and/or to what extent Huff could on her behalf. The affidavit lacks any affirmative statement whatsoever with respect to Baldwin. Instead, it appears to describe Childers's usual practices (perhaps only with respect to health care and financial agency matters) but not with respect to collateral agreements; *i.e.*, those binding the parties to arbitration. Huff indicated in her affidavit that she had no specific memory of the circumstances surrounding execution of the ADR agreement. However, she was certain that her mother had not authorized Huff to bind her mother to such a contract.

There is no evidence specific to Baldwin directing that Huff act as her agent. Similarly, there is no evidence tending to establish the breadth of any authority allegedly granted. Where the scope of authority delegated to Huff was not shown, we must agree with the circuit court that the care home did not

establish a fiduciary relationship and actual agency as defined by our common law sufficient to bind Baldwin to the terms of the ADR agreement.

It is axiomatic that where evidence is insufficient to prove a manifestation of consent by the principal, it cannot be shown that an ostensible agent had either implied or apparent authority to bind the principal. Even where Huff took actions consistent with her apparent authority to make health care decisions and/or financial decisions, there is no proof that Baldwin actually granted Huff authority broad enough to encompass an agreement to arbitrate any claims.

Finally, there is no indication that agreeing to be bound by arbitration was necessary for Baldwin's admission to the care home. The ADR agreement was voluntary and completely collateral to admission to the care home. Consequently, it cannot be shown that Huff acted with implied authority to bind her mother to arbitration since no such agreement was a condition precedent to admission. Under the specific facts of this case, the circuit court did not err by concluding that Baldwin's estate is not bound by the terms of the ADR agreement.

Next, we consider the care home's assertion that Baldwin's subsequent decision to appoint Huff as her power of attorney ratified the purported ADR agreement of October 22, 2019. The circuit court specifically rejected the care home's contention that Baldwin granted Huff authority to execute an arbitration agreement on her behalf. There is no basis to conclude that Baldwin's

later express and formal delegation of that authority to Huff constitutes her acquiescence in -- or validation of -- Huff's previous action. There is no indication of what factors may have influenced Baldwin's decision to grant her daughter authority to act on her behalf with respect to a wider range of matters -- including a collateral agreement to mediate or arbitrate her claims. Temporally, that grant of authority occurred subsequent to the admission rather than prior to or contemporaneously with her entry into the home.

As its last argument, the care home contends that Baldwin was a third-party beneficiary of the ADR agreement and, therefore, that her estate is bound by its terms. We disagree.

The third-party-beneficiary theory is an exception to the general rule that only parties to an agreement may be bound by its provisions. *See Ping*, S.W.3d at 596. The exception arises where contracting parties intend by their agreement to benefit a non-party. *Id.* A party seeking to bind a non-party to an agreement is subject to any defense that the promissor would have against the promissee. *Id.* The Supreme Court of Kentucky observed in *Ping*, *supra*, that the theory has been applied in care home cases where -- even though the resident's agent did not have authority to bind the principal as a party to the arbitration clause -- the agent entered the admissions agreement not merely as a purported representative but also in her individual capacity. In such an instance, *Ping* holds

that the resident, or her estate, can be deemed to be bound by the arbitration clause as a third-party beneficiary of the contract between the care home and the agent. *Ping*, 376 S.W.3d at 596.

As explained above, we agree with the circuit court that Huff did not have authority to bind Baldwin to the terms of the ADR agreement. Moreover, she was simply acting as her mother's agent without any indicia that agency had been conferred. Baldwin made no such avowal in the presence of Childers. Nor was Huff ever a party to the agreement. She did not execute the admissions agreement on her own behalf or in her individual capacity. She did so solely on behalf of her mother without any designation of agency sufficient to bind Baldwin as principal. The circuit court correctly concluded that Baldwin's Estate cannot be deemed a third-party beneficiary of the ADR agreement.

In summary, the care home failed to meet its burden of establishing the existence of a valid and enforceable ADR agreement because it did not establish that Huff was authorized to execute the ADR Agreement on Baldwin's behalf; the care home did not establish that Baldwin ratified the ADR agreement after the fact of its execution; and the third-party-beneficiary theory does not apply. Therefore, the trial court properly denied the care home's motion to compel arbitration.

We affirm the order of the Madison Circuit Court denying the home's motion to compel arbitration, and we remand the case for additional proceedings to address the merits of the claims brought by Baldwin's estate.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Rebecca R. Schafer
Louisville, Kentucky

Emily W. Newman
Louisville, Kentucky

Harley C. Piercy
Louisville, Kentucky

BRIEF FOR APPELLEE:

Hannah R. Jamison
Lexington, Kentucky