RENDERED:  SEPTEMBER 19, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2024-CA-0621-MR


ESQUARED COMMUNICATIONS,
LLC; ESQUARED 2
COMMUNICATIONS, LLC; DALE
COOPER; AND COOPER
ENTERPRISES                                                APPELLANTS



APPEAL FROM MERCER CIRCUIT COURT
v.             HONORABLE JEFFREY L. DOTSON, JUDGE
ACTION NO. 20-CI-00089



DON YATES, JR.; YATES
ENTERPRISES, INC.; AND SUMMIT
VOIP, LLC                                                   APPELLEES




OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; KAREM AND TAYLOR, JUDGES.

KAREM, JUDGE: Dale Cooper, and companies eSquared, and eSquared 2 (collectively "Cooper") appeal from the circuit court's order granting partial summary judgment in favor of former business partner, Don Yates, and companies Yates Enterprises (collectively "Yates") and Summit VOIP. They also appeal the denial of their summary judgment motion as to the cross-complaint. Specifically, Cooper contends the court failed to acknowledge the existence of disputed material facts and failed to follow established caselaw. This Court, having been fully briefed on the matter and carefully considering the merits, hereby affirms the Mercer Circuit Court's Order in part, reverses in part, and remands with further instructions.

## FACTUAL AND PROCEDURAL BACKGROUND

### a. Factual Background

ESquared is a telecommunications business formed by Cooper and Yates in November of 2006 as a limited liability company. A one-page, handwritten document, dated "1-23-07" entitled "Ownership Agreement" was signed by both men. The document detailed the percentages of ownership, stock value, and shares to which each was entitled: Cooper – 55% and Yates – 45%. It further specified Cooper would be responsible for "telecom," while Yates would be responsible for "operations." Both had responsibilities for contracts, hiring, and financials. Cooper was to receive a salary of $8,000. Yates was to receive a salary

of $3,000 and $5,000 deferred. The agreement did not specify the frequency of the payments. One checking account was established for the company with both men as the only signatories. Both parties agree, at no time were Cooper or Yates ever officers, directors, or employees of eSquared or eSquared 2.

Cooper maintains that he and Yates executed a supplemental Operating Agreement and an Amended Operating Agreement for eSquared, both drafted by the law firm Wyatt, Tarrant, and Combs in July of 2007. Yates disputes the existence of finalized documents. More importantly, no executed Operating Agreement, or Amended Operating Agreement, was ever produced or entered into evidence. While Cooper was able to produce incomplete *drafts* of documents entitled Operating Agreement and Amendment to Operating Agreement, no *executed* document was produced. Notably, each incomplete draft contained a page wherein the dollar amount of initial capital contribution by each member should have been listed, but instead was blank. While there is evidence of discussions regarding the proposed content of these documents, no testimony was elicited concerning the finalization of either.

In 2018, unbeknownst to Cooper, eSquared 2 was formed by Yates, and eSquared was dissolved. However, eSquared 2 never opened its own separate bank account but, instead, used the eSquared bank account.

In the summer of 2019, Cooper experienced health issues prompting him to get his affairs in order. In so doing, Cooper learned of the dissolution of eSquared and the formation of eSquared 2 by Yates. In reviewing the accounts of eSquared 2, he found what he believed to be questionable payments to Yates. Cooper took over running eSquared 2 in 2019, and Yates formed the company Summit VOIP thereafter. Subsequently, Cooper filed suit in 2020, making numerous claims against Yates and his companies.

b. **Procedural Background**

Cooper initially filed suit in March of 2020, making numerous claims against Yates and Yates Enterprises. Yates answered and countersued, asserting claims against the eSquared companies and Cooper. The court entered the first of several scheduling orders on June 30, 2020.

During the course of litigation, Cooper discovered Yates had formed the company, Summit VOIP. By agreement of the parties, Cooper filed an Amended Complaint on August 12, 2020, to assert claims against Summit VOIP, to which the defendants answered and filed counterclaims on August 14, 2020. On February 19, 2021, the court entered an Agreed Amended Scheduling Order.

On October 11, 2021, Cooper filed the Second Amended Complaint.[1] On October 18, 2021, Yates and Summit VOIP answered the new complaint and filed Second Amended Counterclaims against Cooper. On January 12, 2022, the court entered yet another Agreed Amended Scheduling Order. In April of 2022, Cooper named accountant R. Wayne Stratton ("Stratton") as the expert he intended to call at trial. In addition, Cooper served Yates with an expert witness report prepared by Stratton.

Finally, on August 25, 2022, the court entered an Agreed Second Amended Scheduling Order wherein the deadline for all factual discovery was identified as December 1, 2022, and the expert witness discovery deadline was set for March 1, 2023. Stratton was deposed by Yates and his deposition testimony was filed with the court on February 15, 2023. Exhibits were produced during the deposition entitled "Distributions and Interest Due Cooper – ESQUARED" and "Distributions and Interest Due Cooper from ESQUARED 2." Totals allegedly owed to Cooper were listed as $467,637 and $61,480, respectively.

Both parties filed for summary judgment. The trial court granted partial summary judgment for both Yates and Cooper on May 29, 2024.

---

[1] Cooper's Second Amended Complaint added claims against a new party to the litigation, Stephen Weafer. Mr. Weafer, up to that point, had been a fact witness in the case. The claims against Mr. Weafer are not at issue in this appeal.

Specifically, the order dismissed the following claims of Cooper's Second

Amended Complaint:

> Count I – Breach of Fiduciary Duty
> (against Yates and Yates Enterprises)

> Count III – Breach of Contract/Operating Agreement
> (against Yates and Yates Enterprises)

> Count IV – Conversion
> (against Yates and Yates Enterprises)

> Count VI – Accounting/Constructive Trust
> (against Yates and Yates Enterprises)

> Count VII – Tortious Interference
> (against Yates, Yates Enterprises, and Summit VOIP)

The court further denied summary judgment for Cooper on all

counterclaims by Yates except the tortious interference claim with regard to the

Ownership Agreement under Count VI of the Second Amended Counterclaim.

This appeal followed by Cooper as to the court's granting of summary judgment to

Yates and the court's denial of summary judgment as to Cooper. [2]

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories, stipulations, and admissions on file,

---

[2] Cooper's request for certification of the record did not include any recordings of proceedings or arguments in the trial court. Our analysis is thus limited to review of the written record and the parties' briefs.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[3] 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Id.* "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.* An issue of material fact is "genuine" at the summary judgment phase when discovery has revealed facts which make it possible for the non-moving party to prevail at trial. *See Welch v. American Publishing Co. of Kentucky*, 3 S.W.3d 724, 730 (Ky. 1999). Finally, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

---

[3] Kentucky Rules of Civil Procedure.

## ANALYSIS

### A. Count I – Breach of Fiduciary Duty & Count VII – Tortious Interference

### 1. Count VII – Tortious Interference

The trial court, in its order granting summary judgment to Yates, first addressed Cooper's tortious interference claim alleging Yates, Yates Enterprises, and Summit VOIP intentionally interfered with the contracts between the eSquared companies and their customers. "To prove a claim of tortious interference with contractual relations, a plaintiff must show: 1) the existence of a contract; 2) defendant's knowledge of the contract; 3) defendant's intent to cause a breach of that contract; 4) that defendant's actions in fact caused a breach of the contract; 5) that plaintiff suffered damages as a result of the breach; and 6) that defendant enjoyed no privilege or justification for its conduct." *Seeger Enters., Inc. v. Town & Country Bank & Tr. Co.*, 518 S.W.3d 791, 795 (Ky. App. 2017) (citations omitted).

The court, in the case *sub judice*, narrowed its analysis to the element of damages, noting correctly that a failure to establish Cooper suffered damages as a result of the breach is fatal to the claim. The court concluded that Cooper failed to quantify his damages in response to Yates' Interrogatories. Specifically, the court stated:

-8-

Factual discovery closed on December 1, 2022, and expert witness discovery closed on March 1, 2023. [Cooper] did not designate an expert witness as to their tortious interference claim and failed to provide [Yates] with information concerning the damages claimed.

After a careful review of the record, we agree. Cooper never provided any information in answer to interrogatories, or otherwise, naming contracts or itemizing monetary damages suffered from the actions of Yates relating to an allegation of tortious interference. By not identifying any contract, Cooper failed to satisfy a key element of a tortious interference claim. We therefore affirm the court's dismissal as to Count VII.

2. Count I – Breach of Fiduciary Duty

The trial court next moved to an analysis of Cooper's claim of breach of fiduciary duty. The basic elements of a breach of fiduciary duty cause of action include: 1) the existence of a fiduciary duty; 2) the breach of that duty; 3) injury; and, 4) causation. *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 193 (Ky. 2013), *as modified* (Feb. 20, 2014). Although the elements for a claim of breach of fiduciary duty are notably different from those of a claim of tortious interference, the court found the claims were "inextricably intertwined with and totally dependent on Count VII." The court concluded, since Cooper could not sustain a viable claim on Count VII, neither could he sustain a viable claim for Count I. Therefore, the court granted Yates'

-9-

motion for summary judgment in relation to Count I, as well. However, we disagree with the court's logic. Cooper did, in fact, name an expert and allege specific damages suffered as a result of Yates' management of eSquared and eSquared 2.

The Second Agreed Amended Scheduling Order entered by the court on August 25, 2022, specified that the deadline for all factual discovery was December 1, 2022, and the deadline for expert witness discovery was March 1, 2023. Yates maintains that Cooper never updated his answer to Interrogatory 12 which asked for specific damage amounts prior to those deadlines. And, while this is true, the argument is not well-founded. In April of 2022, Cooper served notice on Yates naming his expert, Stratton. More importantly, Stratton was deposed by Yates, and the deposition testimony was filed with the court on February 15, 2023, approximately two weeks prior to the court's deadline for expert witness discovery. Moreover, exhibits were produced during the deposition entitled "Distributions and Interest Due Cooper – ESQUARED" and "Distributions and Interest Due Cooper from ESQUARED 2." Totals allegedly owed to Cooper were listed as $467,637 and $61,480, respectively. Thus, Yates cannot say they had no information in relation to damages claimed from the alleged violation of his fiduciary duty.

Summary judgment "shall be rendered forthwith if the pleadings, *depositions*, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03 (emphasis added). The evidence a judge reviews when deciding a motion for summary judgment is inclusive of much more than a party's answers to interrogatories, and the rule specifically lists depositions to be included as part of the analysis. Having provided specific damage amounts as required to sustain a breach of fiduciary claim, summary judgment granted for Yates and Yates Enterprises, based solely on the lack of such evidence, was erroneous and must therefore be reversed. However, we will not further analyze the claim regarding the remaining elements. Such review falls under the purview of the trial court, and because the trial court did not fully examine Cooper's claim, we will not either. Thus, we reverse the trial court as to the dismissal of Count I and remand the case for a full review of the elements for Cooper's claim of breach of fiduciary duty. Because we are returning this issue to the trial court for analysis, any other arguments presented by Cooper regarding Claim I are moot.

B. Count III – Breach of Contract/Operating Agreement

Under Count III, Cooper claims Yates breached the Operating Agreement and Amended Operating Agreement. However, the record contains

only *unsigned draft* documents entitled Operating Agreement and Amended Operating Agreement wherein monetary contributions for each party were never provided. As noted above, no such *finalized* documents were ever entered into evidence. While Cooper was able to produce billing and correspondence from lawyers referencing the *drafting* of the documents, nothing in the record mentions a finalized product or relates to the signing of the documents in question.

Cooper argues that the failure to provide a copy of executed documents is not fatal to his claim. Rather, he asserts that the parties acted in accordance with the documents, and therefore, a genuine issue of material fact exists, negating the granting of summary judgment for Yates. As Cooper's sole support for this argument, he maintains that the parties utilized the "entity membership structure" established by the Amended Operating Agreement in all of their tax returns and financial bookkeeping. However, there is no evidence in the record that any actions taken by Yates or Cooper were different from the original handwritten Owner's Agreement or were unique to the Operating Agreement or Amended Operating Agreement. Moreover, the words "entity membership structure" do not appear in either document.

Summary judgment should not be granted unless "[the movant's] right to judgment is shown with such clarity that there is no room left for controversy. . . . Only when it appears impossible for the nonmoving party to

produce evidence at trial warranting a judgment in his favor should the motion for summary judgment be granted." *Steelvest*, 807 S.W.2d at 482 (citations omitted). Cooper has provided no evidence of the existence of either the Operating Agreement or Amended Operating Agreement by providing executed documents or by the execution of the terms of the documents in the management of the business. Therefore, we affirm the court's granting of summary judgment to Yates and Yates Enterprises as to Count III of Cooper's Second Amended Complaint.

C. Count IV – Conversion

It is undisputed that only one bank account was used for the purpose of operating both eSquared and eSquared 2. It is further undisputed that all payments received from customers were deposited in that bank account to which both Cooper and Yates were signatories. Cooper alleges Yates, when affecting withdrawals from that bank account, converted those funds for his own use.

Conversion is an intentional tort defined as "the wrongful exercise of dominion and control over property of another[.]" *State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626, 627 (Ky. App. 1990).

The elements of the tort of conversion are as follows:

(1) the plaintiff had legal title to the converted property;

(2) the plaintiff had possession of the property or the right to possess it at the time of the conversion;

(3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;

(4) the defendant intended to interfere with the plaintiff's possession;

(5) the plaintiff made some demand for the property's return which the defendant refused;

(6) the defendant's act was the legal cause of the plaintiff's loss of the property; and

(7) the plaintiff suffered damage by the loss of the property.

*C&H Mfg., LLC v. Harlan Cnty. Indus. Dev. Auth., Inc.*, 600 S.W.3d 740, 745 (Ky. App. 2020) (emphasis and citations omitted). The trial court's analysis of, and ultimate rejection of, Cooper's conversion claim rested solely on the first element identifying who had legal title to the property.

Cooper makes conclusory statements that authorization to use a bank account merely provides apparent authority to the outside world, and apparent authority only permits the individual to transact *legitimate* business. However, they provide no law in support of this contention. In fact, the Supreme Court has affirmatively rejected such an argument.

In *Ford v. Baerg*, 532 S.W.3d 638 (Ky. 2017), a case similar in nature to the case *sub judice*, an attorney, Angela Ford, received large legal fees for work she had performed. To help own and manage these funds, Ford hired attorney Seth

Johnston. *Id.* at 640. Ostensibly, Johnston formed two limited liability companies

("LLCs") for this purpose. He opened separate bank accounts for each LLC and

was a named signatory for each of these accounts. He then divided up Ford's

funds and deposited her funds in those bank accounts. *Id.* In explaining the

actions which led to litigation over these accounts, the Supreme Court stated:

> Johnston also represented Harold and Kathleen
> Baerg at this time. The Baergs wished to engage in an
> I.R.C.[4] § 1031 like-kind property exchange. And they
> wanted Johnston to hold the proceeds from their sold
> property in an intermediary company, Emerald Riverport,
> solely controlled by Johnston, until they purchased new
> property to complete the § 1031 transaction.
>
> Unknown to Ford and the Baergs, Johnston was
> involved in an extensive scheme of fraud, theft, and
> illegal drug distribution. Johnston spent the Baergs'
> proceeds from the sale of their property, placed in
> Emerald Riverport, for his own scheme. When the
> Baergs wanted the money to purchase new property
> under their § 1031 transaction, Johnston wire-transferred
> funds from [one of] Ford's . . . account[s] to pay the
> seller of the new property. Johnston also used funds
> from Ford's [other] account to purchase a cashier's
> check, which he then negotiated to Zafar Nasir. Nasir
> later negotiated that cashier's check to Faisal Shah, who
> deposited the check's funds into his personal bank
> account.

*Id.*

Subsequently, Ford filed an action for conversion against Baerg and

Shah. The trial court granted summary judgment on behalf of Ford, but it was

---

[4] Internal Revenue Code.

reversed on appeal.  The Supreme Court granted discretionary review and affirmed the Court of Appeals' decision.  Specifically, the Supreme Court held that Ford could not satisfy the first two elements of conversion, that:  (1) Ford had legal title to the converted property; and that (2) Ford had possession of the property or the right to possess it at the time of the conversion.  *Id.* at 641.  In the Court's analysis, it found it persuasive that Johnston was the signatory on Ford's accounts, giving him apparent authority to act on her behalf.

> Recall that Ford designated Johnston as a *signatory* on both her . . . bank accounts.  So Johnston possessed some type of authority over these accounts.  The Baergs and Shah correctly argue that, at the very least, Johnston possessed apparent authority to transfer funds from these accounts to third parties, thereby eventually validly divesting Ford of any legal title or right to possess the transferred funds in both cases.
>
> "Apparent authority . . . is not actual authority but is the authority the agent is held out by the principal as possessing.  It is a matter of appearances on which third parties comes to rely."  "An agent is said to have apparent authority to enter transactions on his or her principal's behalf with a third party when the principal has manifested to the third party that the agent is so authorized, and the third party reasonably relies on that manifestation."  "That a principal did not approve an individual transaction does not change the fact that an agent can have apparent authority to make the signature and thus engage in the transaction, at least when viewed from the perspective of the bank."
>
> Without question, as a signatory, Johnston possessed the authority to transfer funds from the bank accounts . . . to third parties from the perspective of

BB&T and Republic Bank. This is the entire reason an individual designates a signatory on a bank account—to vest authority in that individual to make transfers from one's bank account and to have the bank recognize that authority. BB&T and Republic Bank reasonably relied on Johnston's status as a signatory when transferring funds from the LLCs' bank accounts to the respective third parties at Johnston's direction. In sum, there is no question that Johnston possessed apparent authority to act on behalf of Ford when managing her LLCs' bank accounts.

*Id.* at 641-42 (footnotes and citations omitted).

Similarly, in the case *sub judice*, Yates, as signatory, had apparent authority to make transactions without the approval of Cooper. When Yates exercised his authority over the accounts, it was as if Cooper himself was the actor. Thus, we affirm the trial court's grant of summary judgment to Yates on Count IV.

D. Count VI – Accounting/Constructive Trust

1. Constructive Trust

As a preliminary issue, we address the fact that Cooper identifies Count VI of the Second Amended Complaint as "Accounting/Constructive Trust" as if these two theories of law are interchangeable or flow automatically one from the other. It should be noted, "the imposition of a 'constructive trust' is not a claim. It is merely a remedy." *Bewley v. Heady*, 610 S.W.3d 352, 357 (Ky. App. 2020) (citation omitted).

The term "constructive trust" appears only four times in Cooper's initial brief and not at all in the reply. When the term does appear, it is always in the form of "accounting/constructive trust" with no argument pertaining to any right thereto. It is not our role to search the record or to supplement an appellant's underdeveloped argument. *Prescott v. Commonwealth*, 572 S.W.3d 913, 919 (Ky. App. 2019). We, therefore, decline to review the issue of a constructive trust.

2. Cooper's Request for an Accounting

A claim for an accounting is an equitable remedy. *Peter v. Gibson*, 336 S.W.3d 2 (Ky. 2010). We review a trial court's decision to afford or deny an equitable remedy under the abuse of discretion standard. *Western Cas. & Sur. Co. v. Meyer*, 192 S.W.2d 388, 391 (Ky. 1946).

"An 'accounting' is defined as an adjustment of the accounts of the parties and *a rendering of a judgment for the balance ascertained to be due.*" *Privett v. Clendenin*, 52 S.W.3d 530, 532 (Ky. 2001) (quoting 1 AM.JUR.2D, Accounts and Accounting § 52 (emphasis added)). "Under the common-law action, where a court finds that the transactions are complicated, a fiduciary or trust relation exists, and there is a need for discovery, a court has the equitable power to compel an accounting by the agent even though an agent is not a trustee in the technical meaning of the word." 1A C.J.S. *Accounting* § 6 (May 2025). The

decision as to whether an accounting is appropriate is a matter within the court's discretion.

In the case at bar, the trial court denied Cooper's request for an accounting against Yates, citing two factors: an admission by Cooper in their response to Yates' motion for summary judgment; and a statement made by Cooper's counsel during the September 21, 2023 hearing that they would subpoena documents from Summit VOIP prior to trial. As to the latter, because it addresses issues with Summit VOIP, this finding by the court is not relevant to Count VI of Cooper's complaint as alleged against Yates and Yates Enterprises. We therefore limit our analysis to the former.

Specifically, the court held "[Cooper] admitted in footnote 45 on page 13 of their Response to Defendants' [Summary Judgment] Motion that they would rely on the documents produced by Yates in 2021 . . . 'in calculating their damages' under Count VII of the Second Amended Complaint." The court went on to state that this admission was fatal to Cooper's claim. However, this is a misstatement of what was actually written in Cooper's pleading. In actuality, the footnote stated "[t]o the extent necessary and out of an abundance of caution, Cooper at a minimum will rely upon the Summit VOIP QuickBooks records and invoices produced from the Yates defendants in 2021 in calculating their damages . . . ." When read in concert with the footnoted sentence, the plain

reading of this language indicates that Cooper was identifying the evidence upon which they would rely in proving their case against Summit VOIP. Cooper was not making an admission, nor were they addressing any claim against Yates. The court's explanation of its finding is not sufficient to determine whether or not an accounting should be ordered as to Yates, and its denial of an accounting is thus an abuse of its discretion. A new analysis of the appropriateness of ordering an accounting is necessary.[5] Thus, we reverse and remand with instructions for the court to determine if the remedy of an accounting would be appropriate.

### E. Denial of Summary Judgment as to Cooper's Counterclaims

Cooper appeals the denial of their motion for summary judgment as to various counterclaims asserted by them. However, these are not properly before the Court. "Outside of the context of immunity, appellate courts only have jurisdiction to review *grants* of summary judgment; a denial of summary judgment is in most cases unreviewable until a final judgment is rendered at the trial court."

---

[5] *See Gentry v. Coffey*, No. 2006-CA-002293-MR, 2007 WL 4465573 (Ky. App. Dec. 21, 2007), an unpublished opinion outlining the process by which a trial court should make the determination of whether an accounting is appropriate. "After rendering an order to account, the court must then conduct the accounting and render final judgment. When conducting the accounting, the court may try the matter by depositions or consider the testimony of witnesses. CR 43.04. As an accounting is tried by the court without a jury, the final judgment must separately set forth findings of fact and conclusions of law as required by CR 52.01. Upon remand, the circuit court shall reconsider the evidence and render final judgment in conformity with CR 52.01. In particular, the final judgment upon the accounting must set forth separate findings of fact and conclusions of law." *Id*. at *2.

*Erie Ins. Exch. v. Johnson*, 647 S.W.3d 198, 202 (Ky. 2022). We thus cannot review the court's denial of summary judgment.

## **CONCLUSION**

In relation to Cooper's Second Amended Complaint, this Court hereby AFFIRMS the Mercer Circuit Court's Order as to its dismissal of: Count III – Breach of Contract and Operating Agreement; Count IV – Conversion; and Count VII – Tortious Interference. We REVERSE and REMAND as to Count I – Breach of Fiduciary Duty and Count VI – Accounting/Conversion.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

A. Lauren R. Nichols
Benjamin J. Lewis
Louisville, Kentucky

BRIEF FOR APPELLEES:

Michael J. Gartland
Lexington, Kentucky